# EXHIBIT A

PATRICK COUGHLIN (CA Bar No. 111070)
MAXWELL R. HUFFMAN (CA Bar No. 264687)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
pcoughlin@scott-scott.com
mhuffman@scott-scott.com

*Lead Attorneys for Co-Lead Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ALPHABET, INC., SHAREHOLDER DERIVATIVE LITIGATION | CONSOLIDATED<br>Case No.: 3:21-cv-9388-RFL<br><br>**DECLARATION OF HON. LAYN R. PHILLIPS (FMR.) IN SUPPORT OF CO-LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>DATE: Tuesday, September 30, 2025<br>TIME: 10:00 a.m.<br>JUDGE: Hon. Rita F. Lin, U.S.D.J.<br>DEPT: Courtroom 15 – 18th Floor |

I, Layn R. Phillips, declare as follows under 28 U.S.C. §1746:

I am filing this declaration in my capacity as mediator in the above-captioned action (the "Action"). As set forth herein, I submit this Declaration in support of Co-Lead Plaintiffs' Motion for Final Approval of Settlement.

## I.  RELEVANT PROFESSIONAL BACKGROUND AND EXPERIENCE

1. I currently serve as a mediator and arbitrator with my own alternative dispute resolution company, Phillips ADR Enterprises ("PADRE"), based in Corona Del Mar, California. I am a member of the bars of Oklahoma, Texas, California, and the District of Columbia, as well as the United States Courts of Appeals for the Ninth, Tenth, and Federal Circuits.

2. I served as the United States Attorney for the Northern District of Oklahoma from 1984 to 1987. I personally tried many cases and oversaw the trials of numerous other cases as a United States Attorney and, prior to my time as a United States Attorney, as both an Assistant

1  United States Attorney in California and Florida, as well as a federal antitrust prosecutor with the FTC's Bureau of Competition in Washington D.C.

3. While serving as the United States Attorney for the Northern District of Oklahoma, I was nominated by President Reagan to serve as a United States District Judge for the Western District of Oklahoma, where I served from 1987 to 1991. While on the bench, I presided over more than 140 federal trials and sat by designation on the United States Court of Appeals for the Tenth Circuit. I also presided over cases in Texas, New Mexico, and Colorado.

4. I left the federal bench in 1991 and joined Irell & Manella, where for 23 years I specialized in alternative dispute resolution, complex civil litigation, and internal investigations. In 2014, I left Irell & Manella to found PADRE. For more than 25 years, I have devoted the majority of my professional life to serving as a mediator and arbitrator in connection with large, complex cases such as the Action.

5. I have successfully mediated numerous complex commercial cases involving Fortune 500 and other publicly traded companies, including more than 300 securities class action cases and shareholder derivative cases. I have mediated hundreds of disputes referred by private parties and courts and have been appointed as Special Master by various federal courts in complex civil proceedings. I serve as a Fellow in the American College of Trial Lawyers, and I have been nationally recognized as a mediator by the Center for Public Resources Institute for Dispute Resolution ("CPR"), serving on CPR's National Panel of Distinguished Neutrals.

6. Among the significant complex matters I have mediated are the NFL concussion cases, the Michigan State and USC sexual abuse cases, the Purdue Opioid bankruptcy, the Boeing air crash derivative litigation, the United Healthcare derivative litigation, the Norfolk Southern Ohio trainwreck litigation, multiple Wells Fargo derivative and class actions, the FirstEnergy derivative litigation, the Fox News and News Corp derivative litigation, the Facebook Cambridge Analytica derivative litigation, and numerous other class action and derivative actions in the high-tech sector.

## II.     NEGOTIATIONS RESULTING IN THE INSTANT SETTLEMENT

7.     The mediation process in connection with the Action was hard fought on all sides. The Settlement is the product of protracted arm's-length negotiations among Co-Lead Plaintiffs Police and Fire Retirement System of the City of Detroit and Bucks County Employees' Retirement System (together, "Co-Lead Plaintiffs" or "Plaintiffs") on behalf of Alphabet, Inc. ("Alphabet"), and certain current and former directors and officers of Alphabet (along with Alphabet, the "Defendants," and collectively with Co-Lead Plaintiffs, the "Parties").

8.     As described below, this mediation spanned several years and included three formal, in-person all-day mediation sessions, as well as numerous other mediation sessions held by way of teleconferences, virtual joint and separate working group caucus sessions, emails, and written submissions by the Parties.

9.     On December 15, 2022, the Parties participated in a full-day mediation session at PADRE's offices in Newport Beach, California. Prior to that mediation session, counsel for the Parties provided me with extensive briefing on the then-current procedural history and factual status of the Action, as well as addressing liability, damages, and risk exposures supported by legal and factual analysis. Among other things, I reviewed the mediation statements and exhibits, including the complaint filed in the Action. Members of my mediation support team attended the mediation session and assisted me in facilitating the negotiations and analyzing the legal and factual issues in the Action.

10.     Final resolution was not reached during the initial mediation session. However, I found the discussions engaged in by the Parties during the first mediation session to be extremely valuable in helping to understand the relative merits of each party's position and to identify the issues that were likely to serve as the primary drivers and obstacles to achieving a settlement.

11. While I am bound by confidentiality with regard to the content of the Parties' discussions and negotiations,[1] I can say that the arguments and positions asserted by Plaintiffs and Defendants during this first mediation session were the product of detailed analysis and hard work, that they were complex, and that, while professional, they were highly adversarial.

12. On February 7, 2024, the Parties engaged in another mediation session, presided over by my colleague, John Kiernan, where they again did not resolve the case. Mr. Kiernan is the former President of the New York City Bar Association, former Co-Chair of Debevoise & Plimpton's Litigation Department, as well as the former Chair of its Ethics Committee.

13. On September 27, 2024, the Parties engaged in a third mediation session over which I presided.

14. Following the three in-person mediation sessions, which occurred over the course of years, I believed that efforts to settle the Action would continue to be challenging as those involved continued to hold strong and vastly divergent views as to the relevant legal and factual arguments, and that a resolution without further litigation seemed unlikely.

15. Over the course of the following months, the Parties continued to vigorously negotiate a settlement. During this time, I or a member of my team presided over numerous informal mediation sessions involving these Parties' working groups and the Defendants' insurers.

16. First, the Parties spent a significant amount of time and effort to negotiate the Corporate Reforms. These negotiations began with the proposed governance reforms drafted by the Plaintiffs' counsel covering a wide range of issues, from measures to improve Board-level compliance reporting to improved training and reporting as they relate to antitrust and other regulatory issues. These sessions were overseen by me or a member of my team. The Parties exchanged numerous drafts and redlines of the proposed governance reforms, sometimes multiple

---

[1] All participants agreed that the entire mediation process was to be regarded as settlement negotiations under Rule 408 of the Federal Rules of Evidence, protecting disclosure made during such process from later discovery, dissemination, publication, and/or use in evidence. By making this declaration, neither the Parties nor I waive in any way the provisions of this confidentiality agreement or the protections of Rule 408. While I cannot disclose the contents of the mediation negotiations, the Parties have authorized me to inform the Court of the procedural and substantive matters set forth herein. Thus, without in any way waiving the mediation privilege, I make this declaration based on personal knowledge.

drafts per week. One particular point of contention was whether the Board needed to create a stand-alone committee devoted to overseeing the Company's regulatory compliance, which took over a year to negotiate. This process was highly contested, with each side vigorously advocating for its respective position.

17. After the Parties agreed to the substance of the Corporate Reforms, they again negotiated in a civil but adversarial manner, with each side vigorously advocating for its respective position, concerning the level of funding Alphabet needed to commit to effectively implement the Corporate Reforms. After many months of further negotiations, the Parties were finally able to agree to a funding level of $500 million in the spring of 2025.

18. Both the $500 million commitment, and the Board Committee—the central feature of the settlement—were the subject of prolonged negotiations. To my knowledge, having mediated many, if not most, of the high-profile derivative cases in the United States in recent years, this is the largest spend commitment ever reached in a Derivative settlement.

### III. NEGOTIATIONS RESULTING IN THE AGREED-UPON REQUEST FOR ATTORNEYS' FEES AND EXPENSES

19. Only after the Parties agreed on the Corporate Reforms, the funding level, and the timing to implement the reforms, did the Parties begin negotiations for an award of attorneys' fees and expenses. This negotiation involved an additional party—the insurers, as Co-Lead Plaintiffs' counsel's fee is coming from Defendants' director and officer liability insurance. The Parties had differing views as to what an appropriate amount of attorneys' fees should be. After considering the arguments presented, and significant back-and-forth between the parties, I made a mediator's recommendation in the amount of $80,000,000 in attorneys' fee and expenses. Both sides accepted this proposal, i.e., Alphabet agreed not to object to a request at this level and counsel for the Plaintiffs agreed not to ask for more. I believe $80,000,000 is fair and reasonable considering the benefits conferred on Alphabet as a result of the Settlement and is consistent with fee provisions in similar complex, large derivative actions. In addition to agreeing to my recommendation, it was agreed that any attorneys' fees and expenses awarded will be paid by Defendants' director and

officer liability insurance carriers. This agreement, too, was the product of arm's-length negotiations.

20. Understanding that every aspect of the final approval of this Settlement is committed to the sound discretion of the trial court, after presiding over the mediation process concerning the matter, it is my professional opinion that the Settlement, as well as the agreed-upon attorneys' fees and expenses for Co-Lead Plaintiffs' counsel, are fair and reasonable and are the product of vigorous and independent advocacy and of arm's-length negotiations conducted in good faith by the Parties.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 5, 2025, at Corona del Mar, CA. _____.

_____
LAYN R. PHILLIPS
Former U.S. District Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List. All parties not so registered will be served via e-mail or U.S. Mail.

Executed on August 15, 2025, at New York, New York.

 /s/ Jing-Li Yu
JING-LI YU (CA Bar No. 342985)
SCOTT+SCOTT ATTORNEYS AT LAW LLP

*Counsel for Co-Lead Plaintiffs*

7

DECLARATION OF HON. LAYN R. PHILLIPS (RET.) IN SUPPORT OF CO-LEAD PLAINTIFFS MOTION FOR FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:21-cv-09388-RFL