# EXHIBIT E

PATRICK COUGHLIN (CA Bar No. 111070)
MAXWELL R. HUFFMAN (CA Bar No. 264687)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
pcoughlin@scott-scott.com
mhuffman@scott-scott.com

*Lead Attorneys for Co-Lead Plaintiff Police and Fire Retirement System of the City of Detroit and Co-Lead Plaintiff Bucks County Employees' Retirement System*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ALPHABET, INC., SHAREHOLDER DERIVATIVE LITIGATION | CONSOLIDATED<br>Case No.: 3:21-cv-9388-RFL<br><br>**DECLARATION OF STEPHEN J. HERMAN IN SUPPORT OF CO-LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**<br><br>Hon. Rita F. Lin, U.S.D.J. |

I, Stephen J. Herman, respectfully declare, under penalty of perjury, that the following are true and correct to the best of my knowledge, information, recollection, and belief:

1.    I am licensed to practice law in the States of Louisiana and Arizona, the United States District Courts for the Middle, Eastern, and Western Districts of Louisiana, the Second, Fifth, Ninth, and Eleventh Circuit Courts of Appeal, and the U.S. Supreme Court.

2.    Among other things, I:

- teach the Complex Litigation: Advanced Civil Procedure course at Tulane Law School;

- teach an Advanced Torts Seminar on Class Actions at Loyola Law School;

- am a member of the American Law Institute and a fellow of the International Academy of Trial Lawyers ("IATL");

- served as one of two court-appointed Liaison Counsel for Plaintiffs, Lead Class Counsel for Plaintiffs, and Chairs of the Fee Committee in *In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex., on Apr. 20, 2010*, No. 2:10-md-02179 (MDL No. 2179) (E.D. La.) (the "Deepwater Horizon Litigation");

- served as one of several court-appointed Settlement Class Counsel for the Taishan Class Settlement in *In Re: Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 2:09-md-02047 (MDL No. 2047) (E.D. La.) (the "Chinese Drywall Litigation");

- serve on the Louisiana State Bar Association ("LSBA") Rules of Professional Conduct Committee;

- have authored and co-authored several law review articles regarding the responsibilities of class counsel and the determination of common-benefit fees;[1]

---

[1]    See Stephen J. Herman & Russ M. Herman, Percentage-of-Benefit Fee Awards in Common Fund Cases, 74 Tul. L. Rev. 2033 (2000); Stephen J. Herman, Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent, 64 Loy. L. Rev. 1 (2018); Stephen J. Herman & Lynn A. Baker, Layers of Lawyers: Parsing the Complexities of Claimant Representation in Mass Tort MDLs, 24 Lewis & Clark L. Rev. 469 (2020).

- was named one of the Top Attorney Fee Experts in Class Actions by the National Association of Legal Fee Analysis in 2018;

- serve as the current Chair of the Class Action, Mass Tort, and Complex Litigation Section of the LSBA;

- am a Past President of the Louisiana Association for Justice (formerly the Louisiana Trial Lawyers Association), the National Civil Justice Institute (formerly the Pound Civil Justice Institute), and the Civil Justice Foundation, as well as the Immediate Past President of the New Orleans Bar Association, and a long-standing member of the Board of Governors of the American Association for Justice (formerly the Association of Trial Lawyers of America);

- previously served as a Lawyer Chair for one of the Louisiana Attorney Disciplinary Board Hearing Committees;

- was appointed to serve on the Louisiana Supreme Court Committee on Rules of Professional Conduct for Class Actions, Mass Torts, and Complex Litigation; and

- am frequently asked to write, speak, and provide expert opinion and advice regarding class actions, complex litigation, legal ethics, professionalism, and attorneys' fees.

3.      I have over 30 years of personal experience preparing and reviewing monthly legal time and expense invoices for submission to clients and/or courts.

4.      I have prepared, reviewed, and submitted monthly fee and cost invoices to a number of private clients such as, and including, for example: FedEx Corporation, Orion Refining Corporation, McGowan Enterprises, Lake Charles Memorial Hospital, Dean Morris LLP, Giannasca Development Corporation, Latter & Blum Property Management Company, Preston Marshall and Rusk Capital Management LLC, Kirshman's Furniture, Patton Boggs, Millberg Weiss, The City of New Orleans, Loyola University, Cytogel Pharma LLC, Gold Star Mortgage Financial Group, and Cox Operating LLC.

5.      I have prepared, reviewed, and submitted numerous time and expense reports to courts in class, mass, MDL, and other complex and/or consolidated cases, and was appointed by the court to serve as Co-Chair of the Fee Committee in the Deepwater Horizon Litigation, which involved extensive review and analysis of the case law associated with fee awards, available hourly rate information, and voluminous time records submitted by dozens of law firms located throughout the United States engaged in class, mass, MDL, and other complex litigation.[2]

6.      I was also been retained, over the course of several years, by AIG and Zurich insurance companies to review and opine on the reasonableness and necessity of voluminous legal time and expense invoices that were paid by one of their insureds to multiple different law firms over the course of more than 10 years in connection with a complex group of environmental sinkhole damages cases.[3]

7.      I have prepared, reviewed and submitted time and expense reports in adversarial fee-shifting situations (e.g., ERISA cases), and in other hourly cases where court approval would be required (e.g., as a curator *ad hoc*).

---

[2]      *See, e.g.*, *Deepwater Horizon*, No. 2:10-md-02179, ECF Nos. 21098 [Petition for Reimbursement of Expenses and Collective Common Benefit Fee Award] at 76-123; 21098-1 [Declaration of Stephen J. Herman and James Parkerson Roy] ¶¶ 117-123 (E.D. La. July 21, 2016); 22628 [Fee and Cost Committee Recommendation] (E.D. La. Apr. 11, 2017).

[3]      While much of this testimony was adduced and submitted subject to confidentiality orders and under seal, such work product includes, for example: *LaBarre v. Occidental,* No. 33796, 23rd Judicial District Court, State of Louisiana, (report July 7, 2020 in support of AIG's Reconventional Demand on Texas Brine's claim for reimbursement of costs and attorneys' fees, and report August 10, 2020 relating to Texas Brine's Third-Party claims for costs and fees against Zurich and AIG) (deposition June 29, 2021) (affidavit July 17, 2021) (tendered, accepted, and testified as expert in complex litigation and professional ethics, including the submission, review and approval of litigation expenses and fees, April 27, 2022); *Pontchartrain Natural Gas, v. Texas Brine,* No.34, 265, 23rd Judicial District Court, State of Louisiana, (report May 10, 2023 relating to Texas Brine's third-party claims for costs and attorneys' fees against AIG) (deposition June 27, 2023); *LaBarre* (report April 12, 2024 in support of Zurich's Opposition to Texas Brine's Motion to Quantify Attorneys' Fees) (deposition April 17, 2024) (tendered, accepted, and testified as expert in complex litigation and professional ethics, including the submission, review and approval of litigation expenses and fees, April 24, 2024); *LaBarre* (report June 21, 2024, relating to Texas Brine's claims for costs and fees relating to Arbitration, Document Review, and post-2019 *LaBarre* and *Marchand* invoices).

3

8.    I have also reviewed, considered, and been asked to make findings and/or recommendations regarding the reasonableness of attorneys' fees in connection with my Hearing Committee service for the Louisiana Attorney Disciplinary Board and my service on the Louisiana Attorney Fee Review Board.

9.    Throughout my own litigation practice, including my participation in bar and professional associations, I have obtained substantial knowledge and information regarding the prevailing law, billing practices, and rates charged and approved throughout the mass, class, and complex litigation community: (i) in the ordinary course of litigation over the past 30-plus years; and (ii) in and through a number of professional appointments and organizations, including the LSBA Rules of Professional Conduct Committee, the IATL, the Litigation Counsel of America, the New Orleans Bar Association (Immediate Past-President), the Federal Bar Association (former Board Member), Southeast Louisiana Legal Services (former Board Member), Louisiana Appleseed (former Board Member), the Louisiana Association for Justice (past President), the American Association for Justice (current Board Member and Executive Committee Member) (and/including the National College of Advocacy, on which I served on the Board for several years and have participated on the faculty of various colleges, seminars, and other CLE programs), the LSBA (current Class Action Section Chair), the American Bar Association, and the National Association of Legal Fee Analysis.

10.    I have personally been involved in disputes where the question of the reasonableness or other entitlement to fees and/or costs was litigated: (i) representing and/or defending attorneys who were claiming fees and/or costs, and/or from whom costs and/or fees were claimed; (ii) as an expert and/or consultant for attorneys or parties who were claiming fees and/or costs, and/or from whom costs and/or fees were claimed;  (iii) as an independent witness to a fee-dispute between and among co-counsel; and (iv) as a party to formal and/or informal fee disputes with clients, co-counsel, former counsel, and/or a former partner, who either contested the fees and/or expenses that we had earned or advanced and incurred, and/or claimed that they were entitled to some or all of our fees.

11.     I have also prepared and presented several speeches and papers on recoverable litigation costs and attorneys' fees.

12.     A full résumé is attached hereto and incorporated herewith as ADDENDUM A.

13.     I was retained by Lead Counsel in the above-captioned litigation to provide the Court with information and opinions based upon my personal experience, knowledge and expertise, in response to two broad questions:

- Do the activities undertaken by Lead Counsel in this case fall within the nature, scope and extent of legal services that would be expected to be undertaken as reasonably necessary in this type of complex litigation?

- Do the time and expense records reflect sound billing judgment?

14.     In submitting this declaration, I am mindful and respectful of the Court's role as the expert on the law in this case.  It is not my intent to simply suggest legal opinions or conclusions.  It is my hope, rather, that the Court might benefit from viewing the relevant legal principles and precedent through the lens of someone engaged in active practice within the legal community, with factual knowledge about the legal market, and personal experience in the litigation and management of class action, multi-district, and other complex cases.  It is in this spirit that I offer the information and observations that follow herein, in the hope that it might be helpful to the Court in reaching a fair and just determination.

15.     I am being compensated at a rate of $950/hr.

16.     The materials I reviewed and considered are cited throughout this declaration and/or listed on ADDENDUM B.

## Summary of Opinions

17.     It is customary in complex litigation of this nature to review and analyze the pleadings, orders, depositions, transcripts, exhibits, and other materials from previous and/or ongoing litigation as well as any legislative and/or regulatory proceedings involving the same conduct and/or the same defendants.

18.    In this particular case, the activities undertaken by Lead Counsel are the types of activities that I would have expected to see in connection with the investigation and prosecution of a civil action of this nature.

19.    For both legal and policy reasons, it is important to take an *ex ante* rather than retrospective approach in the assessment of reasonable and compensatory common-benefit efforts.

20.    Lead Counsel's billing records reflect sound billing judgment.

21.    While it may be somewhat difficult to place a precise dollar value on the proposed settlement, the fees requested as a percentage-of-benefit to the shareholders would appear to fall well below the 25% benchmark that is typically applied by the Ninth Circuit in class action cases.

22.    It is significant to note that the attorneys' fees are being paid primarily, if not exclusively, out of available insurance proceeds, and do not in any way affect or diminish the injunctive or monetary benefits inuring to the individual shareholders or to the company as a whole.

## Review of Materials from Related Cases

23.    It is a standard and customary practice in complex litigation of this nature for the responsible attorneys involved to inquire into the existence of other civil lawsuits, criminal investigations, regulatory actions, and/or legislative proceedings, involving the same conduct and/or the same defendants; and then to collect, review, and marshal the pleadings, orders, deposition, trial and/or hearing transcripts, exhibits, and other materials from such lawsuits or other proceedings.

24.    As we were preparing for trial in the *Scott v. American Tobacco* case,[4] for example, we had lawyers and paralegals who worked full-time in a dedicated "depository", as well as the

---

[4]    *Scott v. Am. Tobacco*, No. 96-8461 (La. July 28, 2003) (jury verdict in Phase I trial for class of Louisiana smokers finding tobacco industry liable for fraud, conspiracy, and intentional torts, and responsible for the establishment of a court-supervised medical monitoring and/or cessation program and jury verdict in Phase II in the amount of $591 Million for 10-year comprehensive court-supervised smoking cessation program) ("Scott"), *aff'd in part*, No. 04-2095 (La. Ct. App. Feb. 7, 2007) (upholding award of $279 Million fund to Class for 10-year cessation program), *on subsequent appeal*, 36 So.3d 1046 (La. Ct. App. 2010) (ordering defendants to

1  attorneys from the eight-to-ten trial team firms, who systematically and comprehensively

2  reviewed, organized, and synthesized materials from congressional hearings, FDA proceedings,

3  surgeon general monographs and reports, documents produced as part of the Liggett settlement,

4  and depositions, expert reports, orders, exhibits, and trial testimony from the numerous previous

5  and ongoing individual, class, state attorney general, and third-party payor actions against the

6  tobacco companies, (as well as potentially relevant patents, scientific articles, medical studies,

7  corporate filings, press releases, advertising materials, and reports).

8       25.    Similarly, in the Deepwater Horizon Litigation*, we had a centralized and dedicated

9  "depository" of many attorneys who collected and reviewed as much material as possible from

10  previous incidents involving the defendants, and the investigations and lawsuits arising therefrom,

11  as well as: (i) the Joint Investigation Team/Marine Board of Investigation hearings and other

12  proceedings conducted by the U.S. Coast Guard and the Minerals Management Services, in which

13  several of the common-benefit attorneys directly participated; (ii) the Transocean Limitation

14  Action, which was originally filed in the Southern District of Texas before being transferred to the

15  MDL; (iii) the Louisiana Department of Environmental Quality investigation; (iv) the Chemical

16  Safety Board investigation; (v) the *Hornbeck* litigation;[5] (vi) ENSCO actions brought under the

17  Administrative Procedure Act;[6] (vii) EPA, NOAA and DOD proceedings, investigations, findings

18  and reports; (viii) *qui tam,* employment discrimination, and other actions that had been filed and/or

19  were ongoing against British Petroleum; (ix) the Gulf Coast Claims Facility formation documents,

20  policies, public statements, statistics, reports, and other activities; (x) the contractual and insurance

21  coverage litigation between and among BP, Transocean, and Transocean's insurance carriers; (xi)

22  the Natural Resource Damages Assessment being conducted by the U.S. Government and the

23

24  deposit $241 million, plus interest, into the Registry of the Court), *writ denied,* 44 So.3d 686 (La. 2010), *cert. denied, Philip Morris USA Inc. v. Jackson*, 564 U.S. 1037 (2011).

25

26  [5]    *Hornbeck Offshore Servs., L.L.C. v. Salazar et al.*, No. 2:10-cv-1663 (E.D. La. filed June 7, 2010).

27  [6]    *Ensco Offshore Co. v. Salazar et al.*, No. 2:10-cv-1941 (E.D. La. filed July 9, 2010).

28

affected States; (xii) the legislative history and other materials stemming from the original passage of the Oil Pollution Act of 1990; and (xiii) the Securities, Derivative, and ERISA litigation that was coordinated in the Southern District of Texas as MDL No. 2185.[7]

26.     In both cases, this time and expense was submitted by the participating attorneys and considered by the Administrative/Fee Committees and the Court in awarding and allocating class counsel and other common-benefit fees.[8]

27.     This is consistent with the efforts that are generally undertaken by lead, class, and other appointed counsel and the common-benefit attorneys who work with them in pharmaceutical, managed care, antitrust, and other class, mass, MDL, and complex cases in which I have been involved.

### The Activities Undertaken by Lead Counsel in This Case Are The Types of Activities One Would Expect to See in Litigation of this Nature

28.     While this derivative action was focused on the knowledge and inaction of the Board of Directors, as distinct from the conduct of the company, it was necessary to understand the factual predicates of alleged antitrust and other potentially unlawful activity.

29.     Indeed, shareholders and their counsel are actively encouraged under Delaware law to use all available tools at hand to diligently investigate the underlying facts and circumstances

---

[7]     *In Re: BP plc Secs. Litig.,* No. 4:10-md-02185 (MDL No. 2185) (S.D. Tex. Aug. 10, 2010).

[8]     In the *Scott* tobacco litigation, *see, e.g.,* JUDGMENT, *Scott v. American Tobacco,* No.968461 (CDC Parish of Orleans, State of Louisiana, Dec. 20, 2013); AGREEMENT (May 10, 2012); *and* SCOTT FEE COMMITTEE MINUTES (Dec. 28, 2012). [*Note* that the *Scott* effort and ultimate fee award and allocation was part of a larger nation-wide "*Castano*" tobacco litigation effort among the *Scott* trial team members and other *Castano* law firms from around the country, who were separately compensated for the same type of efforts, (*i.e.,* the collection, review, analysis and organization of materials from previous and/or parallel civil actions, criminal investigations, and legislative and regulatory proceedings), in connection with an arbitration fee award to firms representing the State of California in connection with the Master Settlement Agreement (MSA).]  With respect to the BP Oil Spill Litigation, *see generally Deepwater Horizon*, No. 2:10-md-2179, ECF Nos. 21098 [Fee Petition] at 11–76 (E.D. La. July 21, 2016); 21849 [Order Approving Aggregate Common Benefit Fees] at 2–27 (E.D. La. Oct. 25, 2016); 22628 [Fee Committee Recommendation] (April 11, 2017); 23491 [Special Master Recommendation] (E.D. La. Oct. 12, 2017); 23574 [Order Adopting Special Master Recommendation] (E.D. La. Oct. 24, 2017).

1   before attempting to set forth the necessary elements that are required as a condition precent to the

2   maintenance of a derivative suit.[9]

3        30.    At the same time, various substantive and evidentiary impediments make it

4   difficult, if not impossible, for Lead Counsel to simply rely on the work product developed in the

5   preceding cases.

6        31.    For one thing, it was contemplated that Plaintiffs' case would be presented to a

7   jury.[10]

8        32.    While parts of previously-taken video depositions may sometimes be played for the

9   jury, it is generally much more effective to present the critical evidence with live witnesses in

10  court.  Video presentations can hold a jury's attention for only so long.  And the adverse parties

11  will frequently be able to effectively drag out and water down the impactful testimony with

12

13

14  ───────────────────────────

15  [9]    *See, e.g.*, *Seinfeld v. Verizon Commc'ns*, 909 A.2d 117, 120 (Del. 2006) ("The rise in books
    and records litigation is directly attributable to **this court's encouragement of stockholders . . .
16  to use the tools at hand to obtain the necessary information before filing a derivative action.**")
    (emphasis added); *Grimes v. Donald*, 673 A.2d 1207, 1216–17 (Del. 1996), *overruled on other
17  grounds by*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ("The jurisprudence of *Aronson* and its
    progeny is designed to create a balanced environment which will: (1) on the one hand, deter costly,
18  baseless suits by creating a screening mechanism to eliminate claims where there is only a
    suspicion expressed solely in conclusory terms; and (2) on the other hand, permit suit by a
19  stockholder who is able to articulate particularized facts showing that there is a reasonable doubt
    either that (a) a majority of the board is independent for purposes of responding to the demand, or
20  (b) the underlying transaction is protected by the business judgment rule."); *Rales v. Blasband*,
    634 A.2d 927, 934-935 n.10 (Del. 1993) ("Although derivative plaintiffs may believe it is difficult
21  to meet the particularization requirement of *Aronson* because they are not entitled to discovery to
    assist their compliance with Rule 23.1 . . . **they have many avenues available to obtain
22  information bearing on the subject of their claims. For example, there is a variety of public
    sources from which the details of a corporate act may be discovered, including the media
23  and governmental agencies such as the Securities and Exchange Commission. In addition, a
    stockholder who has met the procedural requirements and has shown a specific proper
24  purpose may use the summary procedure embodied in DELAWARE CODE, Title 8:
    Corporations, §220 to investigate the possibility of corporate wrongdoing. . . . Nothing
25  requires the Court of Chancery, or any other court having appropriate jurisdiction, to . . .
    penalize diligent counsel who has employed these methods, including section 220, in a
26  deliberate and thorough manner in preparing a complaint that meets the demand excused
    test of *Aronson*.**") (emphasis added).

27  [10]    *See In re Alphabet Derivative Litig.*, No. 3:21-cv-09388, ECF Nos. 1 at 150 (N.D. Cal.
    Dec. 3, 2021) (jury demand); 100 at 351 (N.D. Cal. July 8, 2025) (jury demand).

28

DECLARATION OF STEPHEN J. HERMAN IN SUPPORT OF CO-LEAD PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
CONSOL. CASE NO.: 3:21-cv-9388-RFL

counter-designations.[11]  In my experience, moreover, the trial judge will generally require that all designations and counter-designations be played together, without distinction, so the jury doesn't necessarily know which points are being stressed by the sponsoring party, and may indeed blame the sponsoring party for wasting their time with seemingly boring or unnecessary counter-designations.

33.    In cases of previous trial testimony, depositions that were not videotaped, or deposition transcripts for which the corresponding videotape is no longer available, it is virtually impossible to effectively present that testimony to a jury.

34.    It is not clear, moreover, that testimony from the previous and/or parallel actions would have been admissible.  As the individual Board Member Defendants were not parties to these other cases, and had no right to cross-examine or re-direct the witnesses, I would have expected them to object.[12]

35.    Further, Lead Counsel, in the prosecution and presentation of the derivative action, would have been required to establish not only most of the predicate antitrust and/or other potential misconduct on the part of the company, but would have additionally been required to establish Board knowledge and acquiescence or other irresponsibility—evidence that would not have been necessary to develop or present in the underlying cases.

---

[11]    *See* Fed. R. Civ. P. 32(a)(6) ("If a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts.").

[12]    *See* Fed. R. Civ. P. 32(a)(8) ("A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter **between the same parties,** or their representatives or successors in interest, to the same extent as if taken in the later action.") (emphasis added); Fed. R. Evid. 804(b)(1)(B) ("is now offered **against a party who had**--or, in a civil case, whose predecessor in interest had--**an opportunity and similar motive to develop it by direct, cross-, or redirect examination**") (emphasis added). While it is perhaps possible that the Court may have ultimately determined that the company and the individual Board Members were effectively the same "party" for these purposes and deemed prior testimony fully admissible, as a practical matter, Lead Counsel would not have known this until relatively shortly before trial.

36.    In crafting the evidence to be presented to a jury in this case, Lead Counsel would have wanted to account for differences in venue, in terms of both the Court and potential juror attitudes and preconceptions.[13]    In every trial, lawyers learn a lot about which lay witnesses, experts, exhibits, arguments, and examinations are and are not effective, and will make adjustments in future trials.  In my experience, moreover, different judges tend to have different requirements and/or preferences for the authentication and foundation for the presentation of exhibits, the use of demonstratives, and the manner in which witnesses are or are not impeached with prior testimony.[14]    So evidence that was deemed admissible in a previous trial may not necessarily be admissible and/or publishable to the jury in a subsequent proceeding—at least not without additional development, foundation, and/or authentication.  Finally, there are often expert witnesses who become unwilling, unable, or undesirable, either with respect to their own opinions and conclusions and/or as vehicles through which lay evidence can be effectively or persuasively presented, in subsequent proceedings.[15]    Lay witnesses who had previously testified in other

---

[13]    In this particular case, the Government trials were bench trials conducted in the District of Columbia and the Eastern District of Virginia.  A private litigant's claims were tried to a jury in the Northern District of California, but that case was litigated largely as part of a multi-district litigation in the Southern District of New York and was followed by a permanent injunction proceeding conducted by the Court.  *See Alphabet,* No. 3:21-cv-09388, ECF No. 100 ¶¶138, 413, 553-554 (N.D. Cal. July 8, 2025) (*see also, e.g., In re Google Play Store Antitrust Litig.*, 2024 WL 3302068 (N.D. Cal. July 3, 2024), *aff'd*, 2025 WL 2167402 (9th Cir. July 31, 2025)).

[14]    Some judges, for example, will require a sponsoring witness with personal knowledge of an exhibit (even an exhibit which has been pre-admitted into evidence and/or to which there is no objection) in order for it to be published to the jury.  Judges sometimes interpret and apply Federal Rule of Civil Procedure 26(a)(2)(B)(ii)-(iii) (and/or state court analogues) differently in terms of the underlying exhibits and/or demonstrative aids experts are permitted to publish to the jury for illustrative purposes during their testimony.  Some judges will allow counsel to employ pre-prepared "cut-outs" from exhibits as demonstrative aids, while other judges require the parties to highlight and enlarge excerpts from exhibits, live and in-court, for cross-examination, use with experts, closing arguments, or other purposes.  Some judges will allow (and even direct or at least prefer) that lawyers "cut to the chase" when attempting to impeach witnesses with previous statements or testimony, while other judges require more traditional (and often varying) levels and forms of predicate foundation.

[15]    This may be the result, for example, of one or more unfavorable *Daubert* rulings, either in the previous related proceedings or in some other intervening unrelated case.  There may have been criticisms of the expert's performance and/or a rejection of his or her conclusions by a judge, jury, and/or mock jurors.  Experts sometimes decide, for whatever reason, not to testify further.  (In the Deepwater Horizon Litigation, for example, there were experts who were willing to testify

---

11

jurisdictions may be located beyond the subpoena power of the court in a subsequent proceeding, develop health problems that make it difficult or impossible to testify (even, perhaps, by perpetuation deposition or remotely), or pass away.

37.     Hence, Lead Counsel would not have been able to rely on being able to simply present the very same evidence that had already been presented to other judges or juries in previous cases.

38.     Even with respect to the relevant evidence that had been previously presented, it would likely need to be re-packaged, re-framed, and re-presented anew.

39.     Billing judgment issues aside, it is generally accepted in this regard that:

> "An attorney fee award should ordinarily include compensation for all the hours reasonably spent."[16]  And, where, as here, a case is handled on a contingency basis, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case," as "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees because the payoff is too uncertain."[17]

### It Is Important to Take an *Ex Ante* Rather Than a Retrospective Approach

40.     It has been observed in the bankruptcy context, for example, that the court should compensate attorneys whose services were reasonable when rendered, but which ultimately may fail to produce a traceable material benefit.  "'Litigation is a gamble, and a failed gamble can often produce a large net loss even if it was a good gamble when it was made.'[18]  The statute permits a

---

on behalf of the U.S. Government but were not willing to testify for private litigants.). The expert might decide to permanently relocate, or retire altogether, or he or she may suffer from debilitating health conditions, or even pass away.

[16]     *Klein v. Gordon*, 2019 WL 1751839, at *3 (C.D. Cal. Feb. 12, 2019); *see also Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (discussed *infra*) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation").

[17]     *Klein v. Gordon*, 2019 WL 1751839, at *3 (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)) (citation modified).

[18]     Quoting *Matter of Taxman Clothing Co.*, 49 F.3d 310, 313 (7th Cir. 1995).

court to compensate an attorney not only for activities that were 'necessary,' but also for good gambles—that is, services that were objectively reasonable at the time they were made—even when those gambles do not produce an identifiable, tangible, and material benefit. What matters is that, prospectively, the choice to pursue a course of action was reasonable."[19]

41.   Delaware courts take a similar approach in the context of class, derivative, and securities cases.[20]

42.   And even in pure prevailing-party statutory fee-shifting situations, the courts recognize the right to attorneys' fees, even with respect to claims on which the plaintiff did not technically prevail, where there is a "common core of facts" or where the claims are based on related legal theories.[21, 22]

---

[19]   *In re Woerner*, 783 F.3d 266, 274 (5th Cir. 2015) (en banc). *See also, e.g.*, *Eckerhart*, 461 U.S. at 435 (Normally, the attorneys' fees awarded under a fee-shifting statute "will encompass all hours reasonably expended on the litigation, and . . . . the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.").

[20]   *See, e.g.*, *In re Infinity Broad. Corp. S'holders Litig.*, 802 A.2d 285, 290 (Del. 2002) ("Even though this suggests that the Delaware Action was only a partial cause of the benefit received as a result of the increase, **counsel applying for attorneys' fees do not need to show that they were the sole cause of a benefit conferred by settlement in order to have earned a fair, adequate and reasonable fee for their work on behalf of the class.**") (emphasis added) (citing *In re Resorts Int'l S'holders Litig.*, 1990 WL 154154, at *4 (Del. Ch. Oct. 11, 1990) ("In determining the proper amount of attorney fees to be awarded if a benefit to the class occurs after suit, **this court must presume a causal connection between the plaintiffs' attorneys' efforts and the benefits.**") (emphasis added); *McDonnell Douglas Corp. v. Palley*, 310 A.2d 635 (Del. 1973)).

[21]   *See, e.g., Shame on You Prods., Inc. v. Banks*, 893 F.3d 661, 669 (9th Cir. 2018) (citing *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005); *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003)).

[22]   Of course, there is a strong presumption against fee-shifting generally, under the so-called "American Rule." *See, e.g., Nerio Mejia v. O'Malley*, 120 F.4th 1360, 1365 (9th Cir. 2024); *Eckerhart*, 461 U.S. at 429 (reaffirming the "American Rule" that each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary). Here, by contrast, where Lead Counsel's fees **(a)** are premised on the common-fund doctrine, and **(b)** the Defendants have agreed to pay the fees out of available insurance proceeds, the Court does not face the same policy implications or concerns.

---

43.     As a matter of policy, there are also good reasons in a common-benefit situation, such as this, to take an *ex ante,* rather than retrospective, approach to what might have been reasonable for the lead, class, or other common-benefit attorneys to pursue on behalf of the shareholders, litigants, and/or members of a class or putative class.

44.     In particular, Lead Counsel and other common-benefit attorneys are generally appointed by the court and/or otherwise asked to prosecute, protect, advance, defend, or otherwise pursue all actions, theories, and claims that have been reasonably stated by any of the suing plaintiffs[23] – as well as tasks which are administrative in nature, for the benefit of all parties and/or the Court.[24]   If courts only reward common-benefit time that is traced, in retrospect, to direct and concretely perceived benefits, when the next complex and coordinated action comes along, the court-appointed attorneys and/or other volunteers will not be incentivized to undertake the more difficult or risky projects that are necessary to the collective interests of all plaintiffs, and/or in the furtherance of judicial economy.

45.     Hence, in the Deepwater Horizon Litigation*,* for example, the Court did not, for lodestar "cross-check" purposes, make any distinction between hours arguably relating to the class settlements first reached with BP (prior to trial) in 2012 and the class settlements later reached (after the phase one trial) with Halliburton in September of 2014 and Transocean in May of 2015.[25]

---

[23]     In this case, for example, Lead Counsel were appointed to "provide direction, supervision, and coordination of all activities of Plaintiffs' counsel," including, among other things, "coordinate and direct the preparation of pleadings," "coordinate on behalf of Plaintiffs in the initiation and conduct of discovery proceedings," and "coordinate and direct the preparation for trial and trial." *See Alphabet,* No. 3:21-cv-09388, ECF No. 28 ¶¶3-4 (N.D. Cal. Dec. 8, 2021).

[24]     *See id.* ¶5 ("Co-Lead Plaintiffs' Lead Counsel shall also be responsible for coordinating all activities and appearances on behalf of Plaintiffs and for the dissemination of notices and orders of this Court, as well as for communications to and from this Court").

[25]     *See generally Deepwater Horizon,* No. 2:10-md-02179, ECF Nos. 21098-1 [Herman-Roy Declaration] ¶¶117–124 (E.D. La. July 21, 2016); 22252 at 47 (E.D. La. Feb. 15, 2017) (approving Halliburton and Transocean Class Settlements and Fees); 22628 [Fee Committee Recommendation] at 8 (E.D. La. April 11, 2017); *In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex., on Apr. 20, 2010,* 2016 WL 6215974, at *19 (E.D. La. Oct. 25, 2016) (approving aggregate fee award regarding BP settlements).

46.     Although speaking to a slightly different issue, defense counsel in this case echoed similar policy considerations with respect to fee compensation for certain oversight enhancements that may have started to be implemented prior to settlement of the derivative action, in response to a combination of factors, including both the derivative action and the underlying enforcement actions or other litigation:

> "So if the message to Plaintiffs' lawyers from this is 'You can't get credit for it,' then the next time I try to settle a case, they're going to say, 'Don't implement that.'"[26]

47.     In considering the time and efforts expended and incurred by Lead Counsel, therefore, it makes sense to include all hours that were reasonable when such activities were undertaken, rather than attempting to tease out, in hindsight, which hours directly contributed to particular added benefits to the company and its shareholders generated by the settlement, as opposed to those which arguably might have been "unsuccessful" or relate to corporate modifications or changes that might arguably have come about anyway.

### Lead Counsel's Billing Records Reflect Sound Billing Judgment

48.     Whether as a matter of professional ethics and responsibility and/or as a matter of substantive case law, lawyers who are being compensated directly or indirectly based on their hours are expected to exercise good billing judgment.

49.     Some of the typical "red flags" that have been observed by courts, as well as insurance companies and other sophisticated clients in their billing guidelines and/or audit processes, are: (i) vague and/or "block" time entries; (ii) bills by the quarter-hour and/or an excessive amount of quarter- or tenth-hour minimums;  (iii) excessive "receipt and review" of the

---

[26]     Tr. of Prelim. Appr. Hr'g at 13:3–5, *Alphabet,* No. 3:21-cv-09388 (N.D. Cal. July 8, 2025).

same materials by multiple timekeepers; and (iv) attorney time that is recorded or billed for clerical or administrative tasks.[27]

50.    Notably, two of the primary concerns sometimes expressed in large complex cases are absent here.

51.    First, appointed counsel and/or courts are sometimes concerned that multiple different firms will assign their own attorneys to attend proceedings and/or to review the same materials, even when not specifically called upon, in order to monitor the litigation so that each firm is informed about the status of the case and prepared to contribute if and when they might be called upon.[28]

52.    Secondly, appointed counsel and/or courts are sometimes concerned that the time and/or expenses incurred in developing and/or presenting the individual aspects of their own

---

[27]    *See, e.g.*, *Hum. Rts. Def. Ctr. v. Cnty. of Napa*, 2021 WL 1176640, at *8, *15 (N.D. Cal. March 28, 2021); *Navarro v. Gen. Nutrition Corp.*, 2005 WL 2333803. at *11 (N.D. Cal. Sept. 22, 2005).

[28]    *See, e.g.*, *In Re: Change Healthcare, Inc. Customer Data Sec. Breach Litig.*, No. 0:24-md-03108 (MDL No. 3108), ECF No. 120 [PTO 5] ¶I(C) (D. Minn. Nov. 25, 2024) ("Read and review time for people not overseeing or directly participating in a project" and "general review of court filings not directly related to work assigned by Leadership Counsel" identified by the court as "examples of time that will not be compensated absent extraordinary circumstances"); *Deepwater Horizon*, No. 2:10-md-02179, ECF No. 14863 [PTO 59] ¶¶10(g) (directing the common-benefit attorneys to audit the time previously submitted, and to exclude "any item of professional time that was expended to 'review' pleadings, emails, correspondence and similar items, unless such 'review time' was directly related to and reasonably necessary for the performance of that particular timekeeper's approved assignments"), 10(h) ("Any submission of professional time in which the amount of 'review' time is excessive as a whole when judged in reference to the role of the timekeeper"), 10(j) ("Unnecessary and/or excessive items of time and expense for 'monitoring' or review of Electronic Court Filings (ECF) in this MDL"), 10(l) ("Unnecessary and/or excessive items of time and expense for "monitoring" the MDL proceedings or related state court litigation by attending hearings, status conferences, or meetings where such attendance was not required by the Court or requested by Co-Liaison Counsel or the Executive Committee.") (E.D. La. July 15, 2015). [***Note*** that, as here, the defendants in *Deepwater Horizon* agreed under the class settlements to pay a sum certain aggregate dollar amount in fees, over and above the relief to the settlement classes, subject to approval by the Court. Therefore, while the hours ultimately submitted by the common-benefit attorneys would be submitted in support of a rough and abbreviated lodestar "cross-check" against that agreed-upon aggregate award, the audit and review of firm time records was undertaken primarily in furtherance of the ultimate allocation of the aggregate fee between and among the 90-plus common-benefit firms. That is, of course, not an issue here.]

1    retained clients' cases will be submitted together with common-benefit efforts for the collective

2    benefit of all litigants.[29]

3         53.    Here, however, Scott+Scott Attorneys at Law LLP ("Scott+Scott") was essentially

4    the only firm conducting the litigation, and there were no individual claims or damages to be

5    advanced, separate and apart from the common and collective benefit of the company and its

6    shareholders.[30]

7         54.    The Ninth Circuit has cautioned that:

8        It is generally improper for the court to impose its own judgment regarding
9        the best way to operate a law firm, or to determine if different staffing
    decisions might have led to different fee requests. It is the difficulty and
10        skill level of the work performed, and the result achieved—not whether it
    would have been cheaper to delegate the work to other attorneys—that must
11        drive the district court's decision. The court may reduce the number of hours
    awarded because the lawyer performed unnecessarily duplicative work.
12        However, participation of more than one attorney does not necessarily
    constitute an unnecessary duplication of effort.[31]

13

14

[29]    *See, e.g., Deepwater Horizon*, No. 10-md-2179, ECF Nos. 508 [PTO 9] ¶II(1) (E.D. La.
15    Oct. 8, 2010) ("Only time spent on matters common to all claimants in MDL 2179 will be
considered in determining fees. No time spent on developing or processing any case for an
16    individual client (claimant) will be considered or should be submitted, unless the case is
determined by the Plaintiffs Steering Committee or the Court to be a 'common benefit case' (*e.g.*
17    'test case' or 'bellwether' case). . . ."); 14863 [PTO 59] ¶10(c) (E.D. La. July 15, 2015) (directing
the common-benefit attorneys to audit the time previously submitted, and to exclude "any item
18    of time or expense that was incurred in connection with the prosecution of an individual case or group
of individual cases asserting claims in this litigation, unless the case or cases were designated by
19    the PSC or the Court as bellwether or test cases"); *In re: Chinese-Manufactured Drywall Prods.
Liab. Litig.*, No. 09-md-02047 (MDL No. 2047), ECF No. 17379 [PTO 28] at 3 ¶2(c) (E.D. La.
20    Jan. 10, 2014) (suggesting that counsel may direct the court-appointed CPA to disallow "any item
of time or expense which was incurred in connection with the litigation of an individual case or
21    group of individual cases involving a Chinese Drywall claimant, unless counsel was authorized by
either Lead Counsel … or Liaison Counsel … to perform such work primarily for the common-
22    benefit of the litigants in MDL No. 2047 and the state litigation with which it is coordinated").

23    [30]    While the Scott+Scott time entries reflect occasional communication with their clients, the
Bucks County Employees' Retirement System and the Police and Fire Retirement System of the
24    City of Detroit were appointed as Co-Lead Plaintiffs, pursuing not their own individual damages,
but the collective and derivative interests of the company and all shareholders.
25

[31]    *Cnty. of Napa*, 2021 WL 1176640, at *14 (N.D. Cal. March 28, 2021) (citing *Moreno v.
26    City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008); *Kim v. Fujikawa*, 871 F.2d 1427, 1435
n.9 (9th Cir. 1989) (finding participation by more than one attorney a "reasonable necessity, given
27    the complexity of legal issues and the breadth of factual evidence involved")) (citation modified).

28

55.    In this particular case, I have reviewed the Scott+Scott billing entries, and find them to be generally free of the types of "red flags" that have historically raised good billing judgment objections and/or concerns.[32]

## The Ninth Circuit Benchmark

56.    The U.S. Ninth Circuit Court of Appeals has established a "benchmark" attorney fee of 25% in common-fund cases.[33]

57.    As explicated during the preliminary approval hearing, the primary goal of the litigation, and the primary benefit of the settlement to the shareholders, is, first and foremost, the establishment of the Risk and Compliance Committee.  This primary relief was accompanied, secondarily, by a set of important Regulatory Readiness Compliance and Management Oversight Enhancements.  With, finally, the $500 million Spending Commitment serving as "a way of ensuring that one of the components of that compliance is sufficiently funded."[34]

---

[32]    There are, to be sure, several timekeepers who could have been more specific in terms of the particular groups of documents or other materials reviewed, and/or the specific purpose for which the review was conducted.  A sophisticated client being billed and paying monthly by the hour may have requested more detail.  But this type of timekeeping by document reviewers is not uncommon in common-benefit cases, and would certainly appear to be sufficient in this type of a situation where: **(i)** the defendants have agreed to pay a sum certain in attorneys' fees, over and above the substantive relief; and **(ii)** the aggregate fee award does not have to be allocated between and among numerous competing firms.  The only other thing I noted in my review were minor charges for routinely scheduled team strategy meetings or calls. In a straight hourly billing situation, a sophisticated client might balk at paying multiple timekeepers for these types of internal discussions.  However, in this particular case: **(i)** Lead Counsel and its attorneys were investing their time on a contingent basis; **(ii)** the meetings and calls were generally very brief; and **(iii)** the total time recorded for this is fairly negligible in the grand scheme of things. (Indeed, I suspect that, had these lawyers and/or paralegals not been involved in such internal discussions, those same personnel would have been spending—and recording—that same time on this matter reviewing, analyzing, and/or marshalling additional Alphabet/Google-related documents and information.)

[33]    *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 949 (9th Cir. 2015); *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 941-942 (9th Cir. 2011).

[34]    Tr. of Preliminary Approval Hearing at 19:16–18, *Alphabet,* No. 3:21-cv-09388 (N.D. Cal. July 8, 2025) (Judge Lin, continuing: "the 500 million is not necessarily the headline. The headline is more the compliance committee"); *id.* at 19:25-20:11 (Defense Counsel: "As we were negotiating this and got over the final stumbling block where the board split off into a committee, we thought that the headline was the committee followed by . . . I believe that the regulatory compliance mechanisms that we're setting up here will become sort of a good housekeeping model

---

18

58.    At the same time, the funding component is itself significant.  As explained by Lead

Counsel:

> The central part was the compliance committees, and that's absolutely true. That's really what we fought over.  That's not to say that we didn't say, "Hey, we need a certain amount that's committed to funding," and that really is a part of the settlement.  And if Google had . . . walked in here and said, "Hey, you know, we're going to spend this anyway," that's really not really what happened.
>
> We said, "Hey, to put this into effect, you're going to at least have to spend a half a billion dollars," and they agreed and understood that.  So that's part of the settlement.[35]

59.    While the added monetary value of the settlement, as compared to what Alphabet might have otherwise spent on such compliance efforts in the absence of the derivative suit, may be somewhat difficult to quantify,[36] when considering the value of the injunctive relief, and accepting the $500 million commitment as a reasonable minimum monetary valuation of the overall benefit to the shareholders, an $80 million fee would only constitute 16% of the benefit, and only 13.8% of the total $580 million "fund."[37]

60.    This, of course, arguably does not account for the full value of the non-monetary benefits – which reforms are themselves of great significance to the shareholders.[38]

---

for other tech companies.  I don't view the funding as nearly as important."); *id.* at 20:22–24 (Lead Plaintiffs' Counsel: "what we argued about for a year and a half in the settlement was a board -- whether we would actually have a board committee").

[35]    *Id.* at 30:21–31:6.

[36]    *See, e.g.*, *id.* at 3–14.

[37]    It is generally appropriate for the Court to award 25% of the entire constellation of benefits, including the attorneys' fees (where, as here, paid over and above the settlement benefits), as well as any notice costs and/or administrative fees.  *See, e.g.*, *Online DVD-Rental*, 779 F.3d at 953; *In re Prudential Ins. Co. of Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 334 (3d Cir. 1998), *cert. denied, Krell v. Prudential Ins. Co. of Am.*, 525 U.S. 1114 (1999); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 802 (3d Cir. 1995), *cert. denied, Gen. Motors Corp. v. French*, 516 U.S. 824 (1995).

[38]    *See generally* Paragraph 57 and Footnote 34, *supra.  See also, e.g.*, *In re Resideo Techs., Inc., Derivative Litig.*, 2024 WL 95194, at *4 (D. Minn. Jan. 9, 2024) ("While the economic value of the Reforms cannot be calculated with precision, empirical studies and survey literature show a correlation between strong governance and stock performance.") (citing *In re Schering-Plough*

19

DECLARATION OF STEPHEN J. HERMAN IN SUPPORT OF CO-LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
CONSOL. CASE NO.: 3:21-cv-9388-RFL

**Defendants Are Paying Agreed-To Fees Out of Insurance Proceeds**

61.    In the conventional fee-shifting situation, the court is attempting to balance the prevailing party's claim for compensation against the objections of the defendant, aided by the general presumptions and policies of the "American Rule."[39]

62.    In the conventional common-fund situation, the court assumes a fiduciary responsibility to protect the interests of the class members or other litigants who are effectively taxed by paying the fee.[40]

63.    Here, by contrast, the need for such protections is largely absent.

64.    Under Section 4.2 of the Settlement Agreement: "Alphabet agrees that, to the extent available, it will cause insurance proceeds from the Defendants' insurers to pay for the Fee and Expense Award in excess of any applicable self-insured retention."[41]

65.    It is not clear, therefore, what standing or motivation a shareholder would have in raising a potential objection to the fee petition. Even assuming *arguendo* that Lead Counsel plausibly could have achieved a potentially better settlement, it is clear that the fees were appropriately negotiated only after the material terms of the settlement had been reached.[42]   And

_____

*Corp. S'holders Derivative Litig.,* 2008 WL 185809, at *5 (D.N.J. Jan. 14, 2008) ("The adoption of the corporate governance and compliance mechanisms required by the settlement can prevent breakdowns in oversight that would otherwise subject the company to the risk of regulatory action .... Effective corporate governance can also affect stock price by bolstering investor confidence and improving consumer perceptions.' The attorneys' fees requested, therefore, reflect only a portion of the value of the benefit the Settlement confers on Resideo and its stockholders.")).

[39]    *See, e.g.*, *O'Malley*, 120 F.4th at 1365; *Eckerhart*, 461 U.S. at 429 (reaffirming the "American Rule" that each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary).

[40]    *See, e.g.*, *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020) ("Because the relationship between class counsel and class members turns adversarial at the fee-setting stage, district courts assume a fiduciary role that requires close scrutiny of class counsel's requests for fees and expenses from the common fund.") (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002)).

[41]    *Alphabet,* No. 3:21-cv-09388, ECF No. 87-1 §4.2 (N.D. Cal. May 30, 2025).

[42]    *Alphabet,* No. 3:21-cv-09388, ECF No. 86 at 7 (N.D. Cal. May 30, 2025) ("Following agreement among the Parties to the terms of the Stipulation, other than with respect to the amount of any attorneys' fees and expenses to be paid to Co-Lead Plaintiffs' Counsel, Plaintiffs' Lead

20

DECLARATION OF STEPHEN J. HERMAN IN SUPPORT OF CO-LEAD PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
CONSOL. CASE NO.: 3:21-CV-9388-RFL

any portion of the agreed-upon fees that are not ultimately approved by the Court will inure, not to the benefit of the shareholders, but to the benefit of the Defendants' insurance carriers.[43]

66.    Where, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts appropriately give the agreement substantial deference.[44]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 13ᵗʰ day of August, 2025, at Jackson Hole, Wyoming.

**STEPHEN J. HERMAN**

---

Counsel and Defendants' counsel separately reached agreement regarding the amount of attorneys' fees and expenses to be paid to Plaintiffs' Lead Counsel. The Parties did not discuss the appropriateness of any amount of attorneys' fees and expenses before all other terms of the Settlement were agreed upon, and the Settling Parties understood at all times that the Settlement was not contingent upon agreement or payment of any attorneys' fees and expenses to Plaintiffs' Lead Counsel.").

[43]    *Alphabet,* No. 3:21-cv-09388, ECF No. 87-1 §4.2 (N.D. Cal. May 30, 2025).

[44]    *See, e.g., Resideo Techs.*, 2024 WL 95194, at *4 (citing *Cohn v. Nelson*, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005) and *Eckerhart*, 461 U.S. at 437 (observing that an agreed-to fee is an ideal situation because "a request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.")).

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.  All parties not so registered will be served via e-mail or U.S. Mail.

Executed on August 15, 2025, at New York, New York.

 /s/ Jing-Li Yu
JING-LI YU (CA Bar No. 342985)
SCOTT+SCOTT
ATTORNEYS AT LAW LLP

*Counsel for Co-Lead Plaintiffs*

# ADDENDUM A

## STEPHEN J. HERMAN

201 St. Charles Ave., Suite 4600
New Orleans, Louisiana 70170
Office: (504) 586-5252
Cell: (504) 232-5154
E-Mail: sherman@fishmanhaygood.com

---

### PERSONAL

Born, in New Orleans, Louisiana, on November 22, 1968.
Married, in 1994, to the Honorable Karen Kirshbom Herman, Louisiana Fourth Circuit Court of Appeal.
Children: Alexandra Rae Herman, 26, and Harris Andrew Herman, 22.

---

### EDUCATION

**Isidore Newman School**                                                                 **New Orleans, LA**
    Board of Regents Scholar, 1987.
    National Merit Letter of Commendation, 1986.

**Dartmouth College**                                                                 **Hanover, NH**
    Bachelor of Arts, 1991.
    GPA, Overall: 3.3;  Major (English): 3.6.
    Third Honor Group, 1989-1990.
    Citation of Excellence in the Study of Milton, 1990.
    Citation of Excellence in the Study of Shakespeare, 1990.
    Winner of the Elenor Frost Playwriting Competition, 1991.

**Tulane University School of Law**                                                   **New Orleans, LA**
    Juris Doctor, *Magna Cum Laude*, 1994.
    GPA: 3.52; Class Rank: Top Ten Percent.
    *Order of the Coif.*

---

### EMPLOYMENT

**Fishman Haygood, LLP**                                                               **New Orleans, LA**
    Special Counsel, 2024 -

**Herman, Herman & Katz, LLC**                                                         **New Orleans, LA**
    Associate, 1995-2001.
    Partner, 2002-2023.

**Herman Mathis Casey Kitchens & Gerel, LLP**                                          **Atlanta, GA**
    Associate, 1999-2001.
    Partner, 2002-2023.

**Justice Harry T. Lemmon, Louisiana Supreme Court**                                   **New Orleans, LA**
    Judicial Clerk, 1994-1995.

**Democratic Senatorial Campaign Committee**                                           **Washington, DC**
    Paid Intern, 1989.

---

### ACADEMIC POSITIONS

**Tulane University Law School**                                                       **New Orleans, LA**
    Adjunct Professor of Law, Advanced Civil Procedure: Complex Litigation, 2009 -

**Loyola University School of Law**                                                    **New Orleans, LA**
    Adjunct Professor, Advanced Torts Seminar on Class Actions, 2005 -

---

### PROFESSIONAL APPOINTMENTS

**American Law Institute**, Member, 2023 -

**Louisiana Attorney Disciplinary Board**
    Hearing Committee Member, 4th and 5th Circuits, 2008-2010.
    Lawyer Chairman, Hearing Committee 56, 2010-2013.

Addendum A

## PROFESSIONAL APPOINTMENTS (cont.)

**Southeast Louisiana Legal Services**, Board of Directors, 2009-2011.

**Louisiana State Law Institute**, Code of Civil Procedure Committee, Sub-Committee on Multi-District Litigation, 2009.

**Louisiana Attorney Fee Review Board**, 2014-2015.

**Louisiana Supreme Court Committee** on Rules of Professional Conduct for Class Actions, Mass Torts and Complex Litigation, 2015-

**LSBA Rules of Professional Conduct Committee**, 2016 -

**LSBA Receivership Panel**, 2019 -

---

## ADMISSIONS TO PRACTICE

**State of Louisiana**, Supreme Court and all inferior courts, 1994.

**State of Arizona**, 2023.

**United States District Courts**, Eastern, Western, and Middle Districts of Louisiana, 1995.

**U.S. Fifth Circuit Court of Appeals**, 1995.

**U.S. Ninth Circuit Court of Appeals**, 2004.

**U.S. Second Circuit Court of Appeals**, 2009.

**U.S. Eleventh Circuit Court of Appeals**, 2020.

**U.S. Supreme Court**, 2007.

---

## BAR AND TRIAL LAWYER ASSOCIATIONS

**International Academy of Trial Lawyers.**
    Fellow, 2015 -

**American Bar Association, 1994  -**
    Patron Fellow, American Bar Foundation.
    Member, Labor and Employment Section, 2004-2017.
    Member, Tort Trial and Insurance Practice Section, 2014 -
    Member, Litigation Section, 2015 -

**American Association for Justice, (formerly ATLA), 1995 -**
    Executive Committee, 2011-2012, 2025 -
    Board of Governors, 2014 -
       Distinguished Service Awards, 2021, 2023.
    *Harry Philo Award,* 2018.
    State Delegate, Louisiana, 2007-2013.
       Chair, AAJ State Delegates, 2011-2012.
    National College of Advocacy (NCA) Board of Trustees, 2011-2017, 2019-2024.
    AAJ Endowment Board, 2010 -
      Treasurer, 2025 -
      Secretary, 2022.
    Wiedemann-Wysocki Award, 2001, 2011.
    Heavy Lifting Award, 2012.
    Above and Beyond Award, 2019.
    *Amicus Curiae* Committee, 2008 -
      Chair, 2019 -
    Chair, AI Task Force, 2023 -
    Legal Affairs Committee, 2016 -
    "Fellow" - National College of Advocacy.
    Co-Chair, Gulf Oil Spill Litigation Group, 2010-2018.
    Co-Chair, Chinese Drywall Litigation Group, 2009-2011.
    Co-Chair, Dialysis Products Litigation Group, 2012.
    ATLA Press Advisory Board, 1999-2002, 2007-2010.
    AAJ PAC Eagle / M-Club.
    Leaders' Forum Member.
    Constitutional Litigation Committee, 1997 -
    Preemption Task Force, 2008 -
    Rule 23 Working Group, 2014 -

**BAR AND TRIAL LAWYER ASSOCIATIONS** (cont.)

30(b)(6) Working Group, 2017 -
MDL Working Group, 2018 -
Member, Commercial Law Section, 1996 -
Member, Insurance Law Section, 1996 -
Member, Admiralty Section, 2010 -
Member, Product Liability Section, 2014 -
Member, Jury Bias Litigation Group, 2015 -
Member, Class Action Litigation Group / Section, 2009 -
Member, Tobacco Litigation Group, 1996 -
Member, Health Care Finance Litigation Group, 1998 -
Member, Electronic Discovery Litigation Group, 2004 -

**Louisiana State Bar Association, 1994 -**
Rules of Professional Conduct Committee, 2016 -
Chair, Class Action, Mass Tort and Complex Litigation Section, 2022 -
Fellow, Louisiana Bar Foundation.
Receivership Panel, 2019 -
Cuba Task Force, 2016-2017.

**Louisiana Association for Justice, (formerly LTLA), 1995 -**
President, 2014-2015.
*Stalwart Award,* 2017.
Executive Committee, 2011-2017.
*Amicus Curiae* Committee, 1999 -
     Chair, 2017 -
Chair, Maritime Section, 2012-2013.
Chair, Law Office Technology Section, 2006-2007.
Board of Governors, 2004-2017.
Council of Directors, 2006-2017.
AAJ State Delegate, 2007-2013.
President's Advisory Board, 1996-1997, 1999-2000.
Constitutional Litigation Committee, 1996 -
Key Contacts Committee, 1997 -
Speakers Bureau, 1999 -

**National Civil Justice Institute (formerly Pound Civil Justice Institute).**
President, 2020-2021.
Board of Trustees, 2015-2022.

**New Orleans Bar Association.**
President, 2023-2024.
Board of Trustees, 2018-2025.
Inn of Court, 2019 -

**Civil Justice Foundation.**
President, 2003-2004.
Board of Trustees, 1999-2012.
*President's Award, 2001.*

**Public Justice, (formerly TLPJ).**
Executive Committee, 2015-2016, 2017-2018.
Board of Trustees, 2010-2022.
Emeritus Board, 2022 -
Membership Committee Co-Chair, 2008-2009.
Louisiana State Network Coordinator, 2000-2012.

**Litigation Counsel of America.**
Senior Fellow, 2016 -
Fellow, 2007-2016.

**Federal Bar Association, New Orleans Chapter.**
Board of Trustees, 2018-2023.
Fellow, Federal Bar Association Foundation.

**Bar Association of the Fifth Federal Circuit.**

**Association of Professional Responsibility Lawyers.**

**BAR AND TRIAL LAWYER ASSOCIATIONS** (cont.)

**Attorney Information Exchange Group** (AIEG) (2013-2023)

**Academy of New Orleans Trial Lawyers.**

**National Association of Legal Fee Analysis** (NALFA) (member 2018-2020)
    Nation's Top Attorney Fee Experts: Assessing Fees in Class Actions, 2018.

Out-of-State Member of the **Mississippi Trial Lawyers Association**, **Consumer Attorneys of California**, the **Illinois Trial Lawyers Association**, the **Arkansas Trial Lawyers Association**, the **Arizona Association for Justice**, and the **Wyoming Trial Lawyers Association.**

**Injury Board.**

---

**PUBLICATIONS**

America and the Law: Challenges for the 21st Century, Austin & Winfield, 1998, (revised edition, Gravier House Press, 1999).

"Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent" Loyola Law Review, Vol. 64, p.1 (Spring 2018).*

"Layers of Lawyers: Parsing the Complexities of Claimant Representation in Mass Tort MDLs," co-authored with Lynn A. Baker, Lewis & Clark Law Review, Vol.24, Issue No.2, p.469 (Spring 2020).**

"HMO Litigation" Tort Litigation: Preparation and Tactics - 2000 and Beyond (West 2003).

"Spoliation of Evidence" Civil Trial Practice: Winning Techniques of Successful Trial Attorneys (Lawyers & Judges Publishing, 2000), revised and reprinted in, Aircraft Accident Reconstruction and Litigation (Lawyers & Judges Publishing, 2003).

"Percentage Fee Awards in Common Fund Cases" Tulane Law Review Vol. 74, Nos. 5-6, p.2033 (June 2000).

"Back to Basics – Briefing and Arguing Motions" TRIAL Magazine (Oct. 2019) p.18, and, reprinted in revised and edited form, as: "Tips for Briefing and Arguing Motions" Louisiana Advocates (Nov. 2019) p.9.

Contributing Author, "Lead Counsel Duties" Standards and Best Practices for Large and Mass Tort MDLs (Bolch Judicial Institute, Duke Law School) (September 2018).

Editorial Board, Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 (Duke Law School Center for Judicial Studies) (August 2018).

Contributing Author, "Procedures and Standards for Objections and Settlement of Objections Under Rule 23(e)(5)" Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 (Duke Law School Center for Judicial Studies) (August 2018).

"Evidence Preservation and Spoliation" TRIAL Magazine, September 2005, p.50.

"U.S. Fifth Circuit Affirms Entry of Default as Sanction for Spoliation" Louisiana Advocates, Vol.XXXVIII, No.12 (Dec. 2023) p.15.

"U.S. Fifth Circuit Affirms Entry of Default as Sanction for Spoliation" Louisiana Advocates, Vol.XXXVIII, No.12 (Dec. 2023) p.15.

"Federal Preemption: Geier and Its Implications" Louisiana Advocates Vol.XVI, No.1, p.8 (Jan. 2001).

"The Use and Abuse of Privilege in Discovery" Australian Products Liability Reporter, Vol. 10, No.5 (June 1999).

"Understanding Spoliation of Evidence" TRIAL Magazine March 2001, p.45.

Review of In Defense of Tort Law, TRIAL Magazine November 2001, p.86.

"Proposed Changes to Rule 23: Consulting with Practicing Attorneys" Sidebar Vol. 3, No. 2, p.7 (Spring 2002), reprinted in, The Federal Lawyer Vol. 49, No.8, p.14 (Sept. 2002).

"Fighting Mandatory Arbitration" Louisiana Advocates Vol.XVII, No.5, p.13 (May 2002).

"Roark v. Humana: What This New Decision Means for Your Medical Malpractice Cases Involving HMOs" Louisiana Advocates Vol. XVIII, No. 1, p.8 (Jan. 2003).

"TLPJ Urges Trial Lawyers to Fight Court Secrecy" Louisiana Advocates Vol.XVII, No.6, p.13 (June 2002).

"Federal Court Upholds Rights of Plaintiffs Who Opted Out of Nationwide Class Action Settlement to Pursue Individual Claims" Louisiana Advocates Vol. XVIII, No. 1, p.14 (Jan. 2003).

"U.S. Supreme Court Rules Asbestos Victims Can Recover Damages Based on Fear of Cancer" Louisiana Advocates Vol.XVII, No.6, p.7 (June 2003).

"Being a Savvy Blogger" Louisiana Advocates (July 2007), p.12.

"How to Maximize the Advantages of E-Mail and Eliminate the Risks" Louisiana Advocates (August 2007), p.6.

"Standing on the Shoulders of Those Who Came Before Us" Louisiana Advocates Vol. XXIX, No.10 (Oct. 2014).

"To Protect and Preserve an Independent Judiciary" Louisiana Advocates Vol. XXIX, No.12 (Dec. 2014).

## PUBLICATIONS (cont.)

"Hot Coffee" <u>Louisiana Advocates</u> Vol. XXX, No.2 (Feb. 2015).

"Personal Remarks" <u>Louisiana Advocates</u> Vol. XXX, No.5 (May 2015).

"How I Spent My Summer Vacations (and Still Remember the Lessons Learned)" <u>Louisiana Advocates</u> Vol. XXX, No.6 (June 2015).

"The Long Arc of Justice" <u>Louisiana Advocates</u> Vol. XXX, No.8 (Aug. 2015).

"Pro Bono Publico" <u>Briefly Speaking</u> (Feb. 2024), p.3.

Litigation Funding ("President's Perspective") <u>Briefly Speaking</u> (July 2024), p.3.

Nature and the Law ("President's Perspective") <u>Briefly Speaking</u> (Aug. 2024), p.3.

Farewell (with "A Few Lines for the Trial Lawyer") <u>Briefly Speaking</u> (Nov. 2024), p.3.

_____

\* Cited and quoted with approval in <u>Casey v. Denton</u>, No.17-521, 2018 WL 4205153 (S.D.Ill. Sept. 4, 2018).

\*\* Cited in Clopton & Rave, <u>MDL in the States</u>, 115 Nw.U.L.Rev. 1649, 1651 n.3 (2021).

_____

## SPEECHES AND PAPERS

"Removal by Preemption Under the *Avco* Exception...." Litigation at Sunrise, 1996 ATLA Annual Convention, Boston, Massachusetts, July 23, 1996.

"Spoliation of Evidence and Related Topics" Yours to Choose Seminar, LTLA, New Orleans, Louisiana, December 28, 1996.

"The Use and Abuse of Privilege in Discovery" Litigation at Sunrise, 1998 ATLA Annual Convention, Washington D.C., July 1998, and Yours to Choose Seminar, LTLA, Baton Rouge, Louisiana, December 30, 1998.

"Force-Placed Insurance: Banks' Failure to Disclose" Last Chance Seminar, LTLA, New Orleans, Louisiana, December 18, 1998.

"HMO Litigation" Winter Ski Seminar, LTLA, Aspen, Colorado, March 6, 2000, and Last Chance Seminar, Winning With the Masters, LTLA, New Orleans, Louisiana, Dec. 14, 2000.

"Class Action Litigation Against HMOs" 2001 ATLA Annual Convention, Montreal, Canada, July 17, 2001.

"Managing Complex Litigation for the Louisiana Paralegal" Institute for Paralegal Education, New Orleans, Louisiana, July 9, 1999.

"Subrogation and Loss Recovery in Louisiana" National Business Institute, New Orleans, Louisiana, March 24, 2000.

"Can We 'Import' Better Law in Personal Injury Cases?" LTLA Spring CLE Retreat, Orlando, Florida, March 31, 2002.

"Case Evaluation and Other Pre-Filing Considerations" Tobacco Litigation Group, ATLA Annual Convention, Atlanta, Georgia, July 21, 2002.

"Proving Fraud in Tobacco Cases" ATLA Annual Convention, Atlanta, Georgia, July 21, 2002.

"Preparing and Taking Depositions for Use at Trial" STLA, New Orleans, Louisiana, February 28, 2003, and LTLA *A La Carte* Seminar, New Orleans, Louisiana, December 30, 2004.

"Trial and Post-Trial Motions: The Plaintiff's Perspective" National Business Institute, New Orleans, Louisiana, June 20, 2003.

"A Practical Framework for Class Action Litigation" ABA National Institute on Class Actions, San Francisco, California, Oct. 24, 2003, and Washington, D.C., Nov. 7, 2003.

"Identifying Spoliation of Evidence Issues and Related Issues Surrounding the Preservation and Discovery of Electronic Data" National Business Institute, New Orleans, LA, March 30, 2004, and Lafayette, LA, December 2, 2004.

"Civil Discovery Sanctions" Dealing with Destruction: Preservation and Spoliation of Electronic Data and Other Evidence in Louisiana, National Business Institute, New Orleans, LA, March 30, 2004, and Lafayette, LA, December 2, 2004.

"Plaintiff's Personal Injury from Start to Finish" National Business Institute, New Orleans, Louisiana, November 30, 2004, and New Orleans, Louisiana, June 30, 2006.

"Litigating the Class Action Suit in Louisiana" National Business Institute, New Orleans, Louisiana, January 7, 2005.

"Proposed Changes to the Federal Rules" Electronic Discovery Teleseminar, May 10, 2005, and, ATLA Annual Convention, Toronto, Canada, July 25, 2005.

"Recent Decisions Affecting E-Discovery" E-Discovery: Get Ready to Apply the New FRCP Changes, National Business Institute, New Orleans, Louisiana, December 20, 2006.

"E-Discovery Procedures and Compliance with the New Rules" E-Discovery: Get Ready to Apply the New FRCP Changes, National Business Institute, New Orleans, Louisiana, December 20, 2006.

**SPEECHES AND PAPERS** (cont.)

"Conducting Forensic Analysis" E-Discovery: Get Ready to Apply the New FRCP Changes,
    National Business Institute, New Orleans, Louisiana, December 20, 2006.

"E-Discovery Under the New Rules" LTLA *A La Carte* Seminar, New Orleans, Louisiana, December 29, 2006.

"The E-Discovery Amendments to the Federal Rules: Panel Discussion - E-Discovery Practical Considerations"
    Federal Bar Association, New Orleans Chapter, February 2, 2007.

"The E-Discovery Amendments to the Federal Rules: Panel Discussion - E-Discovery Ethics"
    Federal Bar Association, New Orleans Chapter, February 2, 2007.

"Class Action Reforms Post CAFA: Leverage the Reforms and Emerging Trends" Strafford Publications,
    CLE Teleconference, March 20, 2007.

"Electronic Evidence Symposium: New Rules, E-Discovery, Spoliation & Sanctions" New Orleans Bar Association,
    2007 Bench Bar Conference, Point Clear, Alabama, March 30, 2007.

"Personal Injury Cases: Calculating and Proving Damages" National Business Institute, New Orleans, LA, October 16, 2007.

"Vioxx Litigation: History, Overview and Navigating Through the Settlement Process" AAJ Weekend With the Stars,
    New York, NY, December 8, 2007.

"E-Discovery: Applying the New FRCP Changes" National Business Institute, New Orleans, LA, Dec. 13, 2007.

"Rethinking Depositions: Discovery vs. Trial" LAJ CLE A La Carte, Baton Rouge, LA, December 27, 2007.

"E-Discovery: A Changing Landscape - Practical & Legal Perspectives" SeminarWeb, January 16, 2008.

"Approaches to Defense Expert Depositions - Technique & Style" AAJ Mid-Winter Convention, Puerto Rico, January 26, 2008.

"E-Discovery Workshop" National Disability Rights Network Annual Conference, New Orleans, LA, June 4, 2008.

"San Diego Fire Cases" Litigation at Sunrise, AAJ Annual Convention, Philadelphia, PA, July 16, 2008.

"E-Discovery: The Paralegal's Role and Ethical Considerations" AAJ Annual Convention, Philadelphia, PA, July 16, 2008.

"Preparation of Expert Testimony" National Business Institute, New Orleans, LA, October 30, 2008.

"Avoiding Common Ethical Pitfalls" Building Your Civil Trial Skills, National Business Institute, New Orleans, LA, Dec. 18, 2008.

"Documentary Evidence" Personal Injury Trials: Getting the Most out of Your Evidence, National Business Institute,
    New Orleans, LA, April 29, 2009.

"Electronic Evidence" Personal Injury Trials: Getting the Most out of Your Evidence, National Business Institute, New Orleans, LA,
    April 29, 2009.

"Ethics and Professionalism" AAJ Jazz Fest Seminar, New Orleans, LA, May 3, 2009.

"12 Lessons in Litigation" Web 2.0 and The Trial Bar, InjuryBoard.com, St. Petersburg, FL, June 5, 2009.

Moderator, Chinese Drywall Litigation Seminar, AAJ, New Orleans, Louisiana, August 11, 2009.

"Re-Thinking Experts" LAJ Post-Legislative Retreat, Carmel, CA, June 30, 2009, LAJ Last Chance Seminar, New Orleans, LA,
    December 10, 2009, and,  LAJ CLE a la Carte, Baton Rouge, LA, December 30, 2009.

"Re-Thinking Experts" SeminarWeb! Live, December 17, 2009.

"Avoiding Common Ethical Pitfalls" Building Your Civil Trial Skills, National Business Institute, New Orleans, LA, Dec. 18, 2009.

"Evaluating Class Actions: How Do You Know When You Have One?" LAJ CLE a la Carte, New Orleans, LA, December 30, 2009.

"Predatory Lending and Sub-Prime Class Actions" AAJ Mid-Winter Convention, Maui, Hawaii, January 30, 2010.

"Coast Guard / MMS Hearings" Gulf Coast Oil Spill Symposium, LSBA, New Orleans, LA, May 25, 2010.

Moderator, Gulf Coast Oil Spill Litigation Teleseminar, AAJ, June 2, 2010.

"Chinese Drywall Litigation" LSBA Summer School for Lawyers, Sandestin, Florida, June 7, 2010.

"12 Lessons in Litigation" LAJ Post-Legislative Retreat, Carmel, CA, June 29, 2010, (invited) (submitted paper) (could not attend).

Moderator, Chinese Drywall Litigation Program, AAJ, Vancouver, British Columbia, July 14, 2010.

Status of BP Claims Facility and Escrow Fund, Gulf Coast Oil Spill Litigation Group Program. Vancouver, British Columbia,
    July 16. 2010.

Update on MDL Issues and Litigation in the Eastern District of Louisiana, Gulf Coast Oil Spill, Vancouver, British Columbia,
    July 16, 2010.

"Oil Pollution Act of 1990: An Overview" Gulf Coast Oil Spill Litigation Group Program. Vancouver, British Columbia, July 16. 2010.

**SPEECHES AND PAPERS** (cont.)

Oil Spill Litigation Panel Discussion: Liability, Punitive Damages, Environmental Issues, etc., HB Litigation Conference, Miami, Florida, November 4, 2010.

"Class Actions and Mass Torts" Avoyelles Parish Bar Association, Marksville, Louisiana, November 5, 2010.

"Ethical Issues in Litigation" SeminarWeb! Live, November 8, 2010.

"Ethics and Professionalism" Last Chance Seminar, Louisiana Association for Justice, New Orleans, Louisiana, December 9, 2010.

"Ethics and Professionalism" CLE a la Carte, Louisiana Association for Justice, New Orleans and Baton Rouge, Louisiana, December 30, 2010.

"Ethics and Professionalism in Litigation" AAJ Annual Convention, San Francisco, California, July 2013.

"The BP Oil / *Deepwater Horizon* Oil Spill Litigation:  An Overview" Louisiana State Bar Association 20th Annual Admiralty Symposium, New Orleans, Louisiana - September 20, 2013.

Faculty, Essentials of Civil Litigation AAJ Trial Advocacy College, Tulane Law School, New Orleans, Louisiana, October 7-10, 2013.

"Multi-District Litigation" National Association of Women Judges, New Orleans, Louisiana, October 11, 2013.

"Ethical Questions Raised by the BP Oil Spill Litigation" 22nd Annual Admiralty and Maritime Law Conference, South Texas College of Law, Houston, Texas, October 18, 2013.

"BP / Deepwater Horizon Oil Spill Litigation" Louisiana Judicial Conference, Evidence and Procedure Seminar, New Orleans, Louisiana, February 20, 2014.

"Ethical and Professional Issues in MDLs" LSBA Annual MDL Conference, New Orleans, Louisiana, March 14, 2014.

"'Legalnomics': Lessons from the Field of Behavioral Economics About Perception and Decision-Making for Trial Lawyers" LAJ a la Carte, New Orleans and Baton Rouge, Louisiana, December 29-30, 2014, and Mississippi Association for Justice Annual Convention, June 12, 2015.

"When the Levee Breaks – Resolving Complex Claims: Lesson of the Deepwater Horizon, Katrina, and More" ABA Section of Litigation, Annual Conference, New Orleans, Louisiana, April 15, 2015.

"E-Discovery: It's Not Just for Big Civil Suits in Federal Court Anymore" NOBA Bench-Bar Conference, Point Clear, April 17, 2015.

"Ethical and Professional Questions in Mass Tort Cases" LSBA Summer School for Lawyers, Sandestin, Florida, June 10, 2015.

"Telling Our Story: The Trial Lawyer's Journey" LAJ Post-Legislative Retreat, Carmel, California, June 22, 2015, and AAJ Weekend with the Stars, New York, New York, December 12, 2015.

Faculty Moderator, Pound Civil Justice Institute 2015 Forum for State Appellate Court Judges, "Contracting Transparency: Public Courts, Privatizing Processes, and Democratic Practices" and "Judicial Transparency in the 21st Century",  Montreal, Canada, July 11, 2015.

"Sidestepping Some of the *Daubert* Landmines" AAJ Annual Convention, Montreal, Canada, July 14, 2015.

"Unsettling Issues with Mass Tort Settlements" ABA Annual Convention, Chicago, Illinois, July 31, 2015.

Stephen J. Herman and James Bilsborrow, "Much Ado About Nothing: The So-Called 'No-Injury Class'" August 18, 2015.

"Class Actions, Mass Torts and Potential Changes to Rule 23" NOBA Bench-Bar Conference, Point Clear, March 10, 2016.

"Attacks on the Judiciary" LSBA Summer School for Lawyers and Judges, Sandestin, Florida, June 6, 2016.

"Procedure & Tactics in Complex Appellate Proceedings: A Case Study" Texas State Bar, Advanced Civil Appellate Practice, Austin, Texas, September 8, 2016.

"Ethics – Important Recent Developments that Impact Litigators on Both Sides of the 'V'" LSBA 23rd Annual Admiralty Symposium, New Orleans, Louisiana , September 16, 2013.

Duke Law Center for Judicial Studies MDL Conference, Panel 1: Extent of Co-Lead Counsel's and PSC's Fiduciary Responsibility to All Plaintiffs, Washington, DC, October 27, 2016.

"Federal State Coordination: Peacefully Co-existing in Parallel Universes" LSBA 16th Annual Class Action / Complex Litigation Symposium, New Orleans, Louisiana, November 11, 2016.

Moderator, "Pros/Cons of State MDLs: Complex Litigation Rules of Professional Responsibility" LSBA 16th Annual Class Action / Complex Litigation Symposium, New Orleans, Louisiana, November 11, 2016.

"Managing Complex Litigation" NOBA Masters of the Courtroom, New Orleans, Louisiana, December 15, 2016.

"Fool Me Once, Shame on You (and Other Thoughts on Professionalism)" NOBA Procrastinators' Program, New Orleans, Louisiana, December 28, 2016.

"A Conversation on Intergenerational Professionalism" NOBA Bench-Bar Conference, Point Clear, Alabama, April 2, 2017.

**SPEECHES AND PAPERS** (cont.)

"Litigating the Disaster Case" ABA Business Section, New Orleans, Louisiana, April 6, 2017.

"Defense Perspective" AAJ Future of Class Actions Conference, Nashville, Tennessee, May 11, 2017.

"Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent" AAJ Mass Torts Best Practices Seminar, Boston, MA, July 21, 2017.

"Handling Complex Litigation" EDLA First Biennial Bench and Bar Conference, September 28, 2017.

"Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent" LSBA 17th Annual Class Action/Complex Litigation Symposium, New Orleans, LA, November 10, 2017.

Faculty, AAJ Advanced Deposition College, New Orleans, LA, January 2018.

"Social Media as Evidence" LAJ / La. Judicial College Evidence & Procedure Seminar, New Orleans, Louisiana, March 16, 2018.

Duke Law Center for Judicial Studies MDL Conference, Panel 3: Standards in Determining Optimum Number of PSC Members and Amounts of Common Benefit Fund, Atlanta, Georgia, April 26, 2018.

"Emerging Issues in Civil Litigation" George Mason University Law & Economics Center 12th Annual Judicial Symposium on Civil Justice Issues, Arlington, Virginia, May 21, 2018.

Panel: Update on La. Supreme Court Committee on Ethical Rules in Complex Litigation and Multi-District Litigation, LSBA Summer School for Lawyers, Sandestin, Florida, June 5, 2018.

"Ethics of Class Action Settlements" AAJ Annual Convention, Denver, Colorado, July 8, 2018.

"Punitive Damages After *Batterton, Tabingo,* and *McBride*: What's Next?" LAJ High Stakes on High Seas, New Orleans, Louisiana, August 17, 2018, and LSBA 25th Annual Admiralty Symposium, New Orleans, Louisiana, September 14, 2018.

Program Coordinator / Moderator, LSBA Personal Injury Seminar, September 7, 2018.

Faculty, AAJ Mass Tort Deposition College, New Orleans, Louisiana, October 24-26, 2018.

"The 'Take No Prisoners' Deposition" AAJ Mass Tort Deposition College, New Orleans, Louisiana, October 24, 2018.

"So, You Settled the Case: Now What?" AAJ Class Action Seminar, New York, NY, December 6, 2018.

"Ethics" NOBA Procrastinators' Program, New Orleans, LA, December 19, 2018.

"Four Hot Spots to Avoid Legal Malpractice" AAJ Mid-Winter Convention, Miami, FL, February 5, 2019.

"Current Landscape of Punitive Damages under Maritime Law" ABA Admiralty and Maritime Law Conference, New Orleans, LA, March 23, 2019.

"Bet the Company Litigation: Are We Really Going to Trial?" LSBA Annual Convention, Sandestin, FL, June 3, 2019, and, New Orleans, LA, December 12, 2019.

"Why Knowing Admiralty Law is Important to Your Practice" Melvin Belli Seminar, San Diego, CA, July 26, 2019.

"Ethical Issues in Class Action Litigation" AAJ Annual Convention, San Diego, CA, July 28, 2019.

"Ethical Issues Facing Litigators" LSBA, Lafayette, LA, Sept. 5, 2019, and New Orleans, LA, Sept. 20, 2019.

"Layers of Lawyers in MDLs: Parsing the Complexities of Claimant Representation in Mass Tort MDLs" Lewis & Clark Symposium on Class Actions, Mass Torts, and MDLs: The Next 50 Years" Portland, Oregon, Nov. 1, 2019.

"Fee Disputes: Intersection of Ethical Rules and Contract Law" Avoyelles Parish Bar CLE, Marksville, LA, November 8, 2019.

"Thoughts on Professionalism" New Orleans Bar Association, Nov. 26, 2019.

"Ethics: Survey of Recent Cases and Advisory Opinions" New Orleans Bar Association, November 26, 2019, and, Louisiana State Bar Association, New Orleans, LA, Dec. 11, 2019.

Program Coordinator / Moderator, LSBA Personal Injury Seminar, December 4, 2019.

"Next Big Thing(s) – What Are the New Class Actions to Watch For?" AAJ Class Action Seminar, New York, NY, December 5, 2019.

"E-Discovery from the Plaintiff's View" New Orleans Bar Association, December 12, 2019.

"A Trial Lawyer's Journey" Winning With the Masters, LAJ, New Orleans, LA, December 12, 2019, and, Western Trial Lawyers Association, Jackson Hole, WY, March 6, 2020 (invited) *

"Legal Ethics in Maritime Cases" Admiralty Law Institute, Tulane University Law School, New Orleans, LA, March 13, 2020.

"Financing Litigation: Views from the Bench and Bar" NOBA Bench-Bar Conference, Point Clear, AL, March 22, 2020 (invited) *

"Bet the Company Litigation: Are We Really Going to Trial?" LSBA Annual Convention, Sandestin, FL, June 8, 2020 (invited) *

**SPEECHES AND PAPERS** (cont.)

"Masters of Disaster: What 9/11, Hurricane Katrina, and Northern California Fires Taught Us That Can Help You with Your Case During and After the COVID Crisis" San Francisco Trial Lawyers Association, SeminarWeb, June 22, 2020.

"Ethical Issues Facing Litigators" Louisiana State Bar Association, New Orleans, LA, June 19, 2020 (invited) *

"Difficult Depositions: Ethical Issues and Strategies" AAJ Annual Convention, Washington, DC, July 14, 2020.

"Whether to Pursue an MDL, and, if so, Issues Affecting What Court to Recommend to the JPML" Baylor Law School Complex Litigation Program, August 4, 2020.

"Plaintiff Perspective on Common Benefit Orders" Baylor Law School Complex Litigation Program, August 13, 2020.

"How to Get the Most out of Lay Witnesses" FBA Federal Practice Series, New Orleans, LA, August 20, 2020.

"Implications for Civil Litigation and the Courts in a Post-Pandemic World" COVID and the Courts Symposium, sponsored by the Civil Justice Research Initiative at Berkeley Law School and RAND, September 24, 2020.

"Case Management" Mass Tort MDL Certification Program, Bolch Judicial Institute, Duke University, Nov. 9, 2020.

"Ethics: Update of Recent Decisions" New Orleans Bar Association, Nov. 17, 2020.

"Thoughts on Professionalism" New Orleans Bar Association, Nov. 17, 2020.

"Evaluation, Preparation, Research and Background Checks on Plaintiff and Defense Experts" New Lawyers Bootcamp, AAJ, April 12, 2021.

"Difficult Depositions: Ethical Issues and Strategies" Arkansas Trial Lawyers Association, Little Rock, AR, April 31, 2021.

"Bet the Company Litigation: Are We Really Going to Trial?" LSBA Annual Convention, Sandestin, FL, June 6, 2021.

"What Will Be the New Normal?" AAJ Annual Convention, Las Vegas, NV, July 14, 2021.

"Where Are We With Punitive Damages?" LSBA Annual Admiralty Symposium, Sept. 17, 2021.

"Attorneys' Fees in Class Actions" Strafford Publications, October 14, 2021.

"Getting Older: How Perspective in Practicing Law Changes" InjuryBoard Summit, Dove Mountain, AZ, Nov. 5, 2021.

"*Daubert* Update" AAJ Mid-Winter Convention, Desert Springs, CA, Feb. 14, 2022.

FBA Civil Rights Program, Mock Appellate Argument in *Students for Fair Admissions v. Harvard College* case, February 22, 2022.

"Ethics Update" New Orleans Bar Association, Nov. 30, 2021.

"Professionalism: What Not to Do" New Orleans Bar Association, Nov. 30, 2021.

"Let's Try This Case!" So You Want to Be a Personal Injury Lawyer, LSBA, Dec. 14, 2021.

"Reflections on Getting Older: Changes in the Profession" New Orleans Bar Association, Dec. 23, 2021.

"The Trial Lawyer's Journey: Reflections on Changes in the Profession" Academy of New Orleans Trial Lawyers, Jan. 19, 2022.

"Should the Shipowners Act of 1851 be Repealed, Modified or Untouched?" Shipowners Limitation of Liability Symposium, Loyola Maritime Law Journal, New Orleans, LA, Feb. 18, 2022.

"Confidentiality Orders and Secrecy Agreements" Virtual Coffee Hour, Mass. Academy of Trial Lawyers, March 18, 2022.

"Litigation Management" Harris Martin MDL Conference: The Current Mass Tort Landscape – Infant Formula, Philips CPAP, Hernia Mesh, and More, New Orleans, LA, March 30, 2022.

"Witness Preparation" AAJ New Lawyers Boot Camp, Vail, CO, May 27, 2022.

"The Show Must Go On: Learning From Your Mistakes" AAJ New Lawyers Boot Camp, Vail, CO, May 28, 2022.

"Ethics Update" Mississippi Association of Justice Annual Convention, New Orleans, LA, June 23, 2022.

"Seller Liability" AAJ Annual Convention, Product Liability Section CLE, Seattle, WA, July 18, 2022.

"The Road Ahead: Recent Law on Trucking Cases - Updates from the Court" LAJ Fall Conference, Sept. 23, 2022.

"Finding the Right Balance Between Your Own Clients and the Greater Demands of the Profession" InjuryBoard Summit, Cliff House, Maine, October 24, 2022.

"Legal Ethics: Top Mistakes in Everyday Practice" FBA Webinar, November 9, 2022.

"Getting Older: Changes in the Profession" New Orleans Bar Association, December 9, 2022.

"Difficult Depositions: Ethics and Strategies" LAJ Last Chance, New Orleans, LA, December 10, 2022.

"Vetting and Preparing Your Expert to Survive *Daubert*" NOBA Masters of the Courtroom, New Orleans, LA, Dec. 15, 2022.

"A Trial Lawyer's Journey - Thoughts on the Profession" Tennessee Trial Lawyers Association, Jan. 14, 2023.

## SPEECHES AND PAPERS (cont.)

Howard Twiggs Memorial Lecture on Legal Professionalism, Phoenix, Arizona, Feb. 6, 2023.

Ethics Panel, "View on Financing Litigation", NOBA Bench-Bar Conference, Point Clear, AL, March 26, 2023.

Faculty, AAJ Deposition College, Washington, DC, April 13-15, 2023.

"Fee Issues in Class Actions" George Washington Law Conference on Resolving Mass Torts in Different Forums, Washington, DC, April 27, 2023.

"What We Are Talking About When We Are Talking About 'Class Actions': Two Recent Examples: The Hard Rock Collapse and the Dean Nursing Home Cases" LSBA Summer School for Lawyers and Judges, Sandestin, FL, June 6, 2023.

"Settlement Considerations and Issues: Fee Charges, Experts Tied Up, and Failure to Produce Trial Package" AAJ Mass Torts Seminar, Philadelphia, Pennsylvania, July 14, 2023.

"Working Together: By Force and/or By Choice - The Challenges, Advantages and Disadvantages of Working with Other Firms" InjuryBoard Summit, Big Sky, Montana, October 14, 2023.

"Legal Ethics and Professionalism: A Survey of Recent Developments and Decisions" New Orleans Bar Association, November 9, 2023, and Last Chance CLE, Louisiana Association for Justice, New Orleans, Louisiana, December 7, 2023.

"Ethical Issues in Class Actions" American Association for Justice Webinar, December 5, 2023.

"Class Counsel Fee Awards: Navigating Increased Judicial Scrutiny" Strafford Webinars, January 11, 2024.

"Ethics for Using ChatGPT/AI in Your Practice" AAJ Mid-Winter Convention, Austin, Texas, February 12, 2024.

"*Deepwater Horizon /* BP Oil Spill Litigation" Joint Presentation of Tulane Law School and Tulane Business School, April 4, 2024.

"Judicial Independence: Lessons from the BP Oil Spill Litigation" ABOTA Southeast Chapter Conference, New Orleans, Louisiana, April 29, 2024, and Tennessee Trial Lawyers Association, New Orleans, Louisiana, January 18, 2025.

"Ethical Rules for Using Generative AI in Your Practice" Louisiana Association for Justice / SeminarWeb, May 14, 2024, Wyoming Trial Lawyers Association, Cody, Wyoming, June 14, 2024, and AAJ Annual Convention, Nashville, Tennessee, July 21, 2024.

"Artificial Intelligence, Judges, and Legal Ethics" NCJI Annual Forum for State Appellate Court Judges, Nashville, Tennessee, July 20, 2024.

"Ethical Issues in Class Actions" Class Action Section, AAJ Annual Convention, Nashville, Tennessee, July 21, 2024.

"Emerging Issues in Legal Ethics" LSBA / Gilsbar, New Orleans, Louisiana, September 13, 2024, and June 13, 2025.

Deposition Workshop (including "Deposition Basics", "Ethical Issues" and "Difficult Depositions: Prep and Strategies"), New Orleans Bar Association, November 6, 2024.

"Thoughts on Professionalism" New Orleans Bar Association, November 12, 2024.

"Marketing, Mentoring and Managing Information: What the ABA Has to Say about ListServs, Google Reviews, and Related Topics" LAJ Last Chance CLE, New Orleans, Louisiana, December 12, 2024.

"Latest on Products MDLs, and What's Next in This Area of the Law" NOBA Procrastinators Program, New Orleans, Louisiana, December 19, 2024.

"Litigation Financing and Its Ethical Implications" LSU Law Review Symposium on Class Actions, MDLs and Complex Litigation, Baton Rouge, Louisiana, February 7, 2025.

"Expert Witnesses in Complex Litigation and the 2023 Amendments to Rule 702" LSU Law Review Symposium on Class Actions, MDLs and Complex Litigation, Baton Rouge, Louisiana, February 7, 2025.

"Why Knowing Admiralty Law May Be Important to Your Practice" Western Trial Lawyers Association Ski Seminar, Jackson Hole, WY, February 27, 2025.

"Marketing, Mentoring and Managing Information: What the Rules Have to Say about ListServs, Google Reviews, and Related Topics" Mississippi Association for Justice Annual Convention, New Orleans, Louisiana, June 12, 2025.

"Ethical Compliance for Attorneys: Safeguarding Your Law License" myLawCLE Webinar, May 28, 2025, and "Maintaining Ethical Standards: Essential Strategies for Protecting Your License" LawPracticeCLE Webinar, July 10, 2025.

"Ethical Rules for Using Generative AI in Your Practice" AAJ Annual Convention, San Francisco, California, July 21, 2025.

"How Should Liability be Distributed in the AI Value Chain?" IAPP AI Governance Conference, Boston, Massachusetts, September 18, 2025 (invited).

"Leveraging AI to Support Board-Certified Lawyers and Certification Bodies" ABA, New Orleans, Louisiana, Sept. 26, 2025 (invited).

"The Next Big Case" IB Summit, Savannah, Georgia, Oct. 10, 2025 (invited).

––––––––––

* Postponed or Cancelled Due to the Covid-19 Coronavirus Crisis.

**REPORTED CASES**

Alliance for Affordable Energy vs. New Orleans City Council,, No. 96-0700 (La. 7/2/96), 677 So.2d 424.

O'Reilly and Griffith vs. Brodie, et al and PMIC, 975 S.W.2d 57 (Tex. App. 4th Dist. - San Antonio 1998),
    review denied, (Aug. 25, 1998); and, 42 ATLA Law Reporter 264 (Sept. 1999).

Marchesani v. Pellerin-Milnor, 248 F.3d 423 (5th Cir. 2001), and, 269 F.3d 481 (5th Cir. 2001); and,
    ATLA Law Reporter, Vol. 46, p.240 (Sept. 2003), and Louisiana Advocates Vol.XVIII, No.4 (April 2003) p.14.

Scott v. American Tobacco, No. 01-2498 (La. 9/25/01), 795 So.2d 1176, and, No. 02-2449 (La. 11/15/02), 830 So.2d 294,
    and, No. 2004-2095 (La. App. 4th Cir. 2/7/07), 949 So.2d 1266, writ denied, 973 So.2d 740 (La. 2008),
    cert. denied, 128 S.Ct. 2908 (2008), and, later proceeding, No. 2009-0461 (La. App. 4th Cir. 4/23/2010), 36 So.3d 1046,
    writ denied, 44 So.3d 686 (La. 2010), cert. denied, 131 S.Ct. 3057 (2011).

Schultz v. Texaco Inc., 127 F.Supp.2d 443 (S.D.N.Y. 2001), and, 308 F.Supp.2d 289 (S.D.N.Y. 2004),
    and, 2009 WL 455163 (S.D.N.Y. Feb. 24, 2009).

Oubre / Orrill v. Louisiana Citizens Fair Plan, No. 09-0566 (La. App. 4th Cir. 12/09/09), 26 So.3d 994, and, No. 2009-0888 (La. App. 4th
    Cir. 4/21/2010), 38 So.3d 457, writ denied, 45 So.3d 1035 (La. 2010); and, No. 2011-0097 (La. 12/16/2011), 79 So.3d 987.

In re Oil Spill by the Oil Rig Deepwater Horizon, 808 F.Supp.2d 943 (E.D.La. 2011) ("B1 Order"); and, 910 F.Supp.2d 891
    (E.D.La. 2012), aff'd, 739 F.3d 790 (5th Cir. 2014) ("Deepwater Horizon II"), cert. denied, 135 S.Ct. 754 (2014);
    744 F.3d 370 (5th Cir. 2014) ("Deepwater Horizon III"); 785 F.3d 986 (5th Cir. 2015) ("Rule 79 Decision"); 785 F.3d 1003
    (5th Cir. 2015) ("Non-Profits Decision"); 793 F.3d 479 (5th Cir. 2015) ("Data Access Appeal"); 858 F.3d 298 (5th Cir. 2017)
    ("495 Appeal"); and, 295 F.R.D. 112 (E.D.La. 2013) (approval of Medical Benefits Settlement); and, 21 F.Supp.3d 657 (E.D.La.
    2014) ("Phase One Trial Findings and Conclusions").

In re Harrier Trust, No. 2018-1467 (La. 2/18/2019), 263 So.3d 884.

Frego v. Settlement Class Counsel, 16 F.4th 1181 (5th Cir. 2021).

Martin v. LCMC Health Holdings, Inc., No.23-411, 2023 WL 4540547 (E.D.La. July 5, 2023), stay denied, 2023 WL 5173791
    (E.D.La. Aug. 11, 2023), affirmed, 101 F.4th 410 (5th Cir. 2024).

Dumas v. Angus Chemical, No. 97-2356 (La. 11/14/97), 702 So.2d 1386.

Sommers v. State Farm, No. 99-2586 (La. App. 4th Cir. 5/3/00), 764 So.2d 87.

Andrews v. TransUnion Corp., No. 2004-2158 (La. App. 4th Cir. 8/17/2005), 917 So.2d 463,
    writ denied, 926 So.2d 495 (La. 4/17/06), and MDL No. 1350;  Louisiana Advocates, Vol.XXIV, No.5 (May 2009), p.14.

Alicea v. Activelaf, No.2016-1818 (La. 10/19/2016), 218 So.3d 1001 (and Duhon v. Activelaf d/b/a SkyZone, 2016 WL 6123820)
    (amicus curiae).

Maggio v. Parker, No.2017-1112 (La. 6/27/2018), 250 So.3d 874 (amicus curiae).

Martin v. Thomas, No.2021-1490 (La. 6/29/2022), 346 So.3d 238 (amicus curiae).

George v. Progressive Waste Solutions, No.2022-01068 (La. 12/9/22) (amicus curiae).

Wightman v. Ameritas Life Ins. Co., No.2022-00364 (La. 10/21/22), 351 So.3d 690 (amicus curiae).

Bulot v. Intracoastal Tubular, No. 00-2161 (La. 2/9/01), 778 So.2d 583 (amicus curiae).

Bratcher v. National Standard Life, 365 F.3d 408 (5th Cir. 2004), cert. denied, 125 S.Ct. 277 (2004).

Bauer v. Dean Morris, 2011 WL 3924963 (E.D.La. Sept. 7, 2011).

Schafer v. State Farm, 507 F.Supp.2d 587 (E.D.La. 2007), and, 2008 WL 131225 (E.D.La. Jan 10, 2008).

Moeckel v. Caremark Inc., 385 F.Supp.2d 668 (M.D. Tenn. 2005).

In re Managed Care Litigation, 150 F.Supp.2d 1330 (S.D.Fla. 2001).

Lakeland Anesthesia v. Aetna U.S. Healthcare, 2000 U.S. Dist LEXIS 8540 (E.D.La. June 15, 2000),
    Andrews Managed Care Litigation Reporter, Vol.I, Issue 13 (July 17, 2000) p.12.

Mays v. National Bank of Commerce, 1998 U.S. Dist. LEXIS 20698 (N.Dist. Miss. Nov. 20, 1998),
    aff'd No. 99-60167 (5th Cir. April 11, 2000).

Jones v. Hyatt, No. 94-2194 (La. App. 4th Cir. 9/25/96), 681 So.2d 381 (appeal counsel).

Delcambre v. Blood Systems, Inc., No. 2004-0561 (La. 1/19/05), 893 So.2d 23 (amicus curiae).

**VERDICTS, DECISIONS, REPORTED SETTLEMENTS AND AWARDS**

Scott v. American Tobacco, et al, Civil District Court for the Parish of Orleans, State of Louisiana, No. 96-8461, July 28, 2003, (Jury verdict in Phase I trial for class of Louisiana smokers finding tobacco industry liable for fraud, conspiracy, and intentional torts, and responsible for the establishment of a court-supervised medical monitoring and/or cessation program), and, May 21, 2004 (Jury verdict in Phase II in the amount of $591 Million for 10-year comprehensive court-supervised smoking cessation program), *aff'd, in part,* No. 2004-2095 (La. App. 4th Cir. 2/7/07) (upholding award of $279 Million fund to Class for 10-year cessation program), *on subsequent appeal,* No. 2009-0461 (La. App. 4th Cir. 4/23/2010), 36 So.3d 1046 (ordering Defendants to deposit $241 Million, plus interest, into the Registry of the Court), *writ denied,* 44 So.3d 686 (La. 2010), *cert. denied,* 131 S.Ct. 3057 (2011) (Member of Trial Team, Philip Morris Team, and co-Lead of Briefing Team).

In re Oil Spill by the Oil Rig *Deepwater Horizon*, 21 F.Supp.3d 657 (E.D.La. 2014) (Phase One Trial Findings & Conclusions that BP was guilty of gross negligence and reckless and willful misconduct) (Co-Liaison Counsel for Plaintiffs and member of the Trial Team).

In re Oil Spill by the Oil Rig *Deepwater Horizon,* 910 F.Supp.2d 891 (E.D.La. 2012), *aff'd,* 739 F.3d 790 (5th Cir. 2014), *rehearing en banc denied,* 756 F.3d 320 (5th Cir. 2014), *cert. denied,* 135 S.Ct. 734 (2014) (approving BP Economic & Property Damages Class Settlement), *and,* 295 F.R.D. 112 (E.D.La. 2013) (approving BP Medical Benefits Class Settlement) (Settlements in Excess of $12.9 Billion) (Co-Lead Class Counsel), *and,* No.10-2179, Rec. Doc. 22252 (E.D.La. Feb. 15, 2017), *aff'd,* 934 F.3d 434 (5th Cir. 2019) (approving Distribution Model for $1.25 Billion Halliburton/Transocean Class Settlements) (Co-Lead Class Counsel).

Hernandez v. Knauf, No.09-6050, 2010 WL 1710434, *In re Chinese-Manufactured Drywall Products Liability Litigation,* MDL No. 2047 (E.D.La. April 27, 2010) (awarding over $164,000 in remediation and other damages, plus interest, costs, and reasonable attorneys' fees, in first bellwether trial, holding that all drywall, insulation, entire electrical system, HVAC system and copper plumbing must be removed) (Co-Lead Trial Counsel).

In re Chinese-Manufactured Drywall Products Liability Litigation, 424 F.Supp.3d 456 (E.D.La. 2020) (approving class settlement of $248 Million against Chinese Manufacturers) (Settlement Class Counsel); (*see also,* Amorin v. Taishan, 861 Fed.Appx. 730 (11th Cir. 2021) (affirming common benefit fee award)); (*see also,* Frego v. Settlement Class Counsel, 16 F.4th 1181 (5th Cir. 2021) (dismissing appeal by individual classmembers)).

Marchesani v. Pellerin-Milnor, 248 F.3d 423 (5th Cir. 2001), *and,* 269 F.3d 481 (5th Cir. 2001), and, *Louisiana Advocates* Vol.XVIII, No.4 (April 2003) p.14, and *ATLA Law Reporter,* Vol. 46, p.240 (Sept. 2003) ($3.375 million settlement).

Turner v. Angelo Iafrate, et al, No. 596-274 (La. 24th JDC), *Louisiana Advocates,* Vol.XXI, No.10, p.15 (Oct. 2006), and, *AAJ Law Reporter,* Vol.L, No.6 (Aug. 2007) ($4.5 million settlement).

Niven v. Boston Old Colony, et al, 24th JDC, State of Louisiana, No.373-299, December 28, 1998, (judgment of $529,027.02 for plaintiff against La. DOTD - total damages $5,290,270.20), *rev'd,* No. 99-783 (La. App. 5th Cir. 1/25/2000).

Schultz v. Stoner, et al, 127 F.Supp.2d 443 (S.D.N.Y. 2001), *and,* 308 F.Supp.2d 289 (S.D.N.Y. 2004), *and,* 2009 WL 455163 (S.D.N.Y. Feb. 24, 2009) (summary judgment granted in favor of mis-classified employees' right to benefits under the Texaco pension plans).

Oubre v. Louisiana Citizens Fair Plan, No. 2011-0097 (La. 12/16/2011), 79 So.3d 987 (affirming class judgment of $92.8 Million).

Fairway v. McGowan Enterprises, Inc., No. 16-3782, Rec. Doc. 60 (E.D.La. March 20, 2018) (successfully resolving TCPA claims thru approved class settlement on behalf of Defendant, McGowan Enterprises).

In re: Vioxx Prod. Liab. Lit., MDL No. 1657 (E.D.La.), *Louisiana Advocates,* Vol.XXIII, No.1 (Jan. 2008) ($4.85 Billion Settlement Fund) (Co-Chair of Sales & Marketing Committee, Insurance Committee, Member of Drafting Team for PNC).

Andrews v. TransUnion Corp., No. 2004-2158 (La. App. 4th Cir. 8/17/2005), 917 So.2d 463, *writ denied,* 926 So.2d 495 (La. 4/17/06), and MDL No. 1350, *Louisiana Advocates,* Vol.XXIV, No.5 (May 2009), p.14 ($75 million settlement fund and significant additional in-kind relief).

DeGarmo v. Healthcare Recoveries, Inc., No. 5:94cv14 (N.D.W.Va. 2001), 45 *ATLA Law Reporter* 180 (June 2002), and *Louisiana Advocates,* Vol.XVI, No.9, p.10 (Sept. 2001) ($3 million settlement for class of policyholders for unlawful subrogation practices).

Galuzska v. Rosamond and GEICO, No.618-435 (La. 24th JDC), *Louisiana Advocates,* Vol.XXIII, No.6 (June 2008) ($925,000 settlement in auto case).

Marberry v. Sears, 15th JDC, State of Louisiana, No.96-3244, December 7, 1998, (judgment of $195,054.96 for plaintiff).

Kettles v. Hartford Life, 1998 U.S. Dist. LEXIS 12899 (E.D.La. Aug. 14, 1998) (summary judgment for plaintiff awarding over $80,000 in disability benefits).

Homespire v. Gold Star, 2024 WL 1541270 (M.D.La. April 9, 2024) and Rec. Doc. 190, No.21-306 (M.D.La. Sept. 26, 2024) (dismissing claims and then the entire case on summary judgment, on behalf of Defendant, Gold Star Financial).

**EXPERT TESTIMONY, INDEPENDENT INVESTIGATION, AND SPECIAL MASTER SERVICES**

*Mitchell v. Freese,* Civil Action No. 61C11:16-CV-00023, Circuit Court, Rankin County, Mississippi (report August 24, 2017) (testimony, arbitration proceeding, November 15, 2017) (ethical and professional duties to clients and co-counsel in mass tort cases).

*U.S. ex. rel. Boogaerts v. Vascular Access Centers,* No. 17-2786, United States District Court for the Eastern District of Louisiana (declaration submitted on November 2, 2018 in support of fee petition for prevailing relator in *qui tam* case).

*Holmes v. Pigg,* No. 2007-2803, Civil District Court, Parish of Orleans, State of Louisiana (deposition September 20, 2011) (legal malpractice liability arising out of an ERISA case).

Bayou Corne Sinkhole Litigation: *LaBarre v. Occidental,* No.33796, 23rd Judicial District Court, State of Louisiana, (report July 7, 2020 in support of AIG's Reconventional Demand on Texas Brine's claim for reimbursement of costs and attorneys' fees, and report August 10, 2020 relating to Texas Brine's Third-Party claims for costs and fees against Zurich and AIG) (deposition June 29, 2021) (affidavit July 17, 2021) (tendered, accepted, and testified as expert in complex litigation and professional ethics, including the submission, review and approval of litigation expenses and fees, April 27, 2022); *Pontchartrain Natural Gas, et al v. Texas Brine,* No.34,265, 23rd Judicial District Court, State of Louisiana, (report May 10, 2023 relating to Texas Brine's third-party claims for costs and attorneys' fees against AIG) (deposition June 27, 2023); *LaBarre* (report April 12, 2024 in support of Zurich's Opposition to Texas Brine's Motion to Quantify Attorneys' Fees) (deposition April 17, 2024) (tendered, accepted, and testified as expert in complex litigation and professional ethics, including the submission, review and approval of litigation expenses and fees, April 24, 2024); *LaBarre* (report June 21, 2024, relating to Texas Brine's claims for costs and fees relating to Arbitration, Document Review, and post-2019 *LaBarre* and *Marchand* invoices).

*Cressy v. Lewis,* No. 2017-2704, Civil District Court, Parish of Orleans, State of Louisiana (report October 14, 2019) (alleged malpractice liability in product liability case).

*Hampton v. Hampton,* No. 775-881, 24th Judicial District Court, State of Louisiana (preliminary report of questions and impressions re fee request of adversary party).

*Cantu v. Gray Ins. Co.,* No.745-245, 24th Judicial District Court, State of Louisiana (report submitted Jan. 15, 2021 in fee dispute between former counsel and subsequent counsel for plaintiff on intervention) (deposition Jan. 22, 2021).

*PG&E Fire Victims Trust,* Bankruptcy Case No. 19-30088 (declaration submitted on February 15, 2021 in support of reimbursement of attorneys' fees to Fire Victim Trust Claimants represented by Singleton Schreiber McKenzie & Scott, LLP).

*Roundup Products Liability Litigation,* MDL No. 2741 (N.D. Cal.) (declaration submitted in opposition to Proposed *Ramirez* Class Settlement) [Rec. Doc. 12682-6] (Feb. 25, 2021).

*Curley v. Andrews,* No.19-2102, Court of Common Pleas, Allegheny County, Pennsylvania (report submitted on May 24, 2021 in legal malpractice case).

*Crosby v. Waits Emmett Popp & Teich,* No. 2019-1609, Civil District Court for the Parish of Orleans, State of Louisiana (report submitted on June 11, 2021 in legal malpractice case) (deposition October 15, 2021) (affidavit Nov. 12, 2021) (testimony at hearing on exception, Nov. 7, 2022, and on Daubert motions, Sept. 22, 2023 (qualified by Court on standard of care)).

*Gangi Shrimp Company vs. Michael A. Britt, et al,* No.771-620, 24th Judicial District Court for the Parish of Jefferson, State of Louisiana (report submitted on August 9, 2021 in legal and accounting malpractice case).

*Anderson v. Bob Dean Jr., et al,* No.820-839, 24th Judicial District Court for the Parish of Jefferson, State of Louisiana (affidavit in support of objectors' opposition to proposed class settlement, Sept. 5, 2022).

*Foreman v. Whitmore, et al,* No.19-09407, Civil District Court for the Parish of Orleans, State of Louisiana (report submitted January 5, 2023 on behalf of defendants in legal malpractice claim arising out of underlying auto accident case).

*Rogers v. Bivalacqua, et al,* No.2019-686, Civil District Court for the Parish of Orleans, State of Louisiana (affidavit and report May 10, 2023 on behalf of plaintiff in legal malpractice case arising out of business transaction).

*In re Reilly-Benton Bankruptcy,* No.17-12870, United States Bankruptcy Court for the Eastern District of Louisiana (declaration May 10, 2023 on behalf of asbestos victim creditors regarding the sufficiency of notice of proposed insurance settlement).

*In re Aqueous Film-Forming Foam* ("PFAS"), MDL No. 2873, No.18-02873, Rec. Doc. 3795-10 (D.S.C. signed Oct. 13, 2023, filed Oct. 15, 2023) (declaration in support of class counsel / common benefit fees in connection with DuPont Class Settlement), and Rec. Doc. 4269-12 (D.S.C. signed Nov. 30, 2023, filed Dec. 18, 2023, in connection with 3M Settlement), and Rec. Doc. 5379-10 (D.S.C. signed July 17, 2024, filed July 22, 2024, in connection with Tyco and BASF Settlements).[1]

Special Master, retained by plaintiffs' counsel to review litigation expenses and to allocate settlement proceeds to 589 plaintiffs from $19.1 million aggregate settlement in *Addison v. Louisiana Regional Landfill Co.,* No.19-11133 (E.D.La.) (2024-2025).

Independent Counsel Investigation, for the Jefferson Parish Ethics & Compliance Commission, regarding the Jefferson Parish Inspector General (March 17, 2025).

---

[1] *See* ORDER AND OPINION, *In re AFFF,* No.18-2873, Rec. Doc. 4885 (D.S.C. April 23, 2024) (3M and DuPont) and Rec. Doc. 6408 (D.S.C. Nov. 22, 2024) (Tyco and BASF) (approving common benefit fees as requested).

**EXPERT TESTIMONY, INDEPENDENT INVESTIGATION, AND SPECIAL MASTER SERVICES** (cont.)

*In re Chevrolet Bolt EV Battery Litigation,* No.20-13256, Rec. Doc. 180-2 (E.D.Mich. Dec. 20, 2024) and Rec. Doc. 188-1 (signed Feb. 13, 2025, filed Feb. 14, 2025) (declaration in support of class counsel fees).

*In re Automotive Parts Antitrust Litigation,* No.13-01103, ECF No. 262-1 (E.D.Mich. June 16, 2025)  (declaration in support of class counsel fees).

*Glenn Stewart, et al vs. Reynolds Law Firm, et al,* No.20233857, 15th Judicial District Court, State of Louisiana (report July 7, 2025 in legal malpractice action arising out of professional negligence claim).

---

**OTHER ACTIVITIES, APPEARANCES, APPOINTMENTS, RECOGNITION, AND AWARDS**

A/V Rated, Martindale-Hubbell.

Finalist, Trial Lawyer of the Year Award, TLPJ, 2005.

Leadership in the Law Recipient, *New Orleans CityBusiness,* 2010, 2017, 2018.
Admitted to the Hall of Fame, 2018.

Louisiana Appleseed, Board of Trustees, 2018-2023.

Appointed Plaintiffs' Co-Liaison Counsel / Co-Lead Class Counsel, *In re: Deepwater Horizon,*
MDL No. 2179, Civil Action No. 2:10-md-02179, USDC for the Eastern District of Louisiana.

Appointed to the Plaintiffs' Steering Committee, *In re: Express Scripts Pharmacy Benefits Management Litigation,*
MDL No. 1672, Civil Action No. 4:05-md-01672-SNL, USDC for the Eastern District of Missouri.

Appointed to the Plaintiffs' Executive Committee, *In re: Cox Set-Top Box Antitrust Litigation,*
MDL No. 2048, Civil Action No. 5:09-ml-02048-C, USDC for the Western District of Oklahoma.

Appointed to the Plaintiffs' Executive Committee, *In re: Budeprion XL Marketing and Sales Litigation,*
MDL No. 2107, Civil Action No. 09-md-2107, USDC for the Eastern District of Pennsylvania.

Appointed Settlement Class Counsel, *In re Chinese Drywall Litigation,* MDL No. 2047
(re Class Settlement with Taishan Defendants, 2019).

Appointed to the Provider Track Plaintiffs' Steering Committee, *In Re: Change Healthcare Customer Data Security Breach Litigation,*
MDL No. 3108, Civil Action No. 0:24-md-03108, USDC for the District of Minnesota.

Top 500 Lawyers in America, *Lawdragon,* 2013, 2018, 2020.
500 Leading Plaintiff Consumer Lawyers, 2021.

Best Lawyers in America, 2012 -
Recognized in areas of Admiralty and Maritime Law, Appellate Practice, Commercial Litigation, Ethics and Professional Responsibility, Legal Malpractice (Defendants), Legal Malpractice (Plaintiffs), Mass Tort Litigation / Class Actions (Plaintiffs), Personal Injury Litigation (Plaintiffs), Product Liability Litigation (Plaintiffs)
"Lawyer of the Year" in the area of Product Liability Litigation, in New Orleans, 2016.
"Lawyer of the Year" in Product Liability Litigation and Personal Injury Litigation, in New Orleans, 2023.
"Lawyer of the Year" in Mass Tort / Class Action and Personal Injury Litigation, in New Orleans, 2025.

"Superlawyer" in the area of Class Actions and Mass Torts, 2007 -

Top 100 Trial Lawyers, National Trial Lawyers Association, 2008 -

Million Dollar Advocates Forum.

Curator *Ad Hoc, Boomco LLC vs. Ambassador Inn Properties, et al,* CDC No. 98-21208, Parish of Orleans, State of Louisiana.

Receiver, *In re P. Michael Doherty Breeden, III,* No.2020-OB-00315, appointed by Chief Judge, CDC, Parish of Orleans.

Receiver, *In re LaRue Haigler, III,* No.2023-B-00446, appointed by Chief Judge, CDC, Parish of Orleans.

Chair, "Juries, Voir Dire, *Batson,* and Beyond: Achieving Fairness in Civil Jury Trials" Pound Institute for Civil Justice, July 17, 2021.

Chair, LSBA Complex Litigation Symposium, New Orleans, Louisiana, Nov. 8, 2024,
and Nov. 7, 2025 (invited).

Host Committee, Fifth Circuit Judicial Conference, New Orleans, Louisiana, April 19-22, 1998.

Moderator, "Dangerous Secrets: Confronting Confidentiality in Our Public Courts" sponsored by AAJ and the Pound Institute, October 13, 2020.

Moderator, "Preparing and Trying a Case in a Covid and Tribal Environment", AAJ Annual Convention, Las Vegas, NV, July 14, 2021.

Moderator, "Winning With the Masters" Last Chance Seminar, LTLA, New Orleans, Louisiana, December 19, 1998.

**OTHER ACTIVITIES, APPEARANCES, APPOINTMENTS, RECOGNITION, AND AWARDS**  (cont.)

Moderator, "Winning With the Masters" Last Chance Seminar, LTLA, New Orleans, Louisiana, December 14, 2000.

Welcome, ATLA Jazz Fest Seminar, New Orleans, Louisiana, May 1, 2003.

Guest Appearance, *It's the Law*  "Challenges for the 21st Century" New Orleans Bar Association,  March 15, 1999.

Guest Appearance, *Bev Smith Show* "Is Tobacco Litigation Good For America?" American Urban Radio Network, June 8, 2000;
*The Morning Show* "Are Tobacco Lawsuits Good For America?" KRLV Radio, June 9, 2000;
*On the Air with Mike Bung* "Tobacco Litigation and Challenges for the 21st Century" 1540 AM, June 15, 2000.

Guest Lecturer, "The Nuremberg Trials" Touro Synagogue Religious School, April 2003.

Judge, ATLA Student Trial Advocacy Competition, Finals, New Orleans, Louisiana, March 26, 1999.

Associate Member, Louisiana Injured Employees Union Education Fund, 1999-2003.

Board of Directors, Touro Synagogue Brotherhood, 1998-2000.

Moulton Loop HOA Board, 2022 –
President, 2024 -

Top Individual Fundraiser, Susan G. Komen Race for the Cure, Oct. 25, 2014.

Advocacy Award, Breastoration, (Cancer Association of Greater New Orleans), 2019.

Member, Mystery Writers Association, 1999-2019.

Author of three self-published novels: The Gordian Knot (Gravier House Press 1998), The Sign of Four (Gravier House Press 1998), and A Day in the Life of Timothy Stone (Gravier House Press 1999), a fourth book, called Broken Lighthouse (Gravier House Press 2021), and a two-act play, Shots Across the Bow (Gravier House Press 2021), as well as non-traditional "history" called Parables of Joy (from *Leave It to Psmith!* by P.G. Wodehouse) (Gravier House Press 2022).

Maintains Website / Blawg regarding Legal, Literary and Other Issues, including updates of What's New in the Courts, including What's New in Products Liability, Class Actions, Legal Ethics and Professionalism, ERISA Litigation, and Electronic Discovery and Spoliation, at: www.gravierhouse.com.

ADDENDUM B

## <u>Documents Reviewed and Considered</u>

1. PACER Docket, *In re Alphabet, Inc., Shareholder Derivative Litigation,* Case No. 3:21-cv-09388-RFL, pending in the U.S. District Court for the Northern District of California

2. VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT, *In re Alphabet Derivative Lit.,* No.21-9388, Rec. Doc. 1 (N.D.Cal. filed Dec. 3, 2021)

3. ORDER APPOINTING CO-LEAD PLAINTIFFS AND LEAD COUNSEL, *In re Alphabet Derivative Lit.,* No.21-9388, Rec. Doc. 28 (N.D.Cal. Dec. 8, 2021)

4. MOTION AND MEMORANDUM FOR PRELIMINARY APPROVAL, *In re Alphabet Derivative Lit.,* No.21-9388, Rec. Doc. 86 (N.D.Cal. filed May 30, 2025)

5. PROPOSED PRELIMINARY APPROVAL ORDER, *In re Alphabet Derivative Lit.,* No.21-9388, Rec. Doc. 86-1 (N.D.Cal. filed May 30, 2025)

6. JING-LI YU DECLARATION, *In re Alphabet Derivative Lit.,* No.21-9388, Rec. Doc. 87 (N.D.Cal. May 30, 2025)

7. JOINT STIPULATION AND AGREEMENT OF SETTLEMENT, *In re Alphabet Derivative Lit.,* No.21-9388, Rec. Doc. 87-1 (N.D.Cal. May 30, 2025), including Exhibits:
    A. Proposed Preliminary Approval Order
    B. Proposed Notice of Pendency and Proposed Settlement of Derivative Action
    C. Proposed Summary Notice
    D. Proposed Order and Final Judgment

8. ORDER REQUESTING SUPPLEMENTAL BRIEFING, *In re Alphabet Derivative Lit.,* No.21-9388, Rec. Doc. 90 (N.D.Cal. June 18, 2025)

9. PLAINTIFFS' RESPONSE TO ORDER REQUESTING SUPPLEMENTAL BRIEFING, *In re Alphabet Derivative Lit.,* No.21-9388, Rec. Doc. 91 (N.D.Cal. filed July 1, 2025)

10. JING-LI YU DECLARATION, *In re Alphabet Derivative Lit.,* No.21-9388, Rec. Doc. 91-1 (N.D.Cal. July 1, 2025), including Exhibits:
    A. Revised Proposed Summary Notice
    B. Revised Proposed Preliminary Approval Order

11. DEFENDANTS' RESPONSE TO ORDER REQUESTING SUPPLEMENTAL BRIEFING, *In re Alphabet Derivative Lit.,* No.21-9388, Rec. Doc. 92 (N.D.Cal. filed July 1, 2025)

12. NOTICE OF QUESTIONS FOR HEARING, *In re Alphabet Derivative Lit.,* No.21-9388, Rec. Doc. 94 (N.D.Cal. July 2, 2025)

Addendum B

13. VERIFIED AMENDED CONSOLIDATED SHAREHOLDER DERIVATIVE ACTION COMPLAINT, *In re Alphabet Derivative Lit.,* No.21-9388, Rec. Doc. 100 (N.D.Cal. filed July 8, 2025)

14. TRANSCRIPT OF PROCEEDINGS, *In re Alphabet Derivative Lit.,* No.21-9388 (N.D.Cal. July 8, 2025)

15. PRELIMINARY APPROVAL ORDER (as modified), *In re Alphabet Derivative Lit.,* No.21-9388, Rec. Doc. 103 (N.D.Cal. July 8, 2025)

16. "Alphabet's $500M Investor Deal Over Compliance Gets 1st OK" by Bonnie Eslinger, Law360 (July 8, 2025)

17. Klein v. Gordon, 2019 WL 1751839 (C.D. Cal. Feb. 12, 2019)

18. In re Infinity Broad. Corp. Shareholders Lit., 802 A.2d 285 (Del. 2002)

19. In re Maxwell Technologies Derivative Lit., 2015 WL 12791166 (S.D.Cal. July 13, 2015)

20. Adkins v. Facebook, Inc., 2020 WL 6710086 (N.D.Cal. Nov. 15, 2020)

21. In re Resideo Techs., Inc., 2024 WL 95194 (D.Minn. Jan. 9, 2024)

22. In re Pfizer Shareholder Derivative Lit., 780 F.Supp.2d 336 (S.D.N.Y. 2011)

23. DECLARATION OF PATRICK J. COUGHLIN, *In re Alphabet Derivative Lit.,* No.21-9388 (N.D.Cal. August 2025)

24. Time Detail  (7/28/2025, 1:37:38 PM)

25. Seinfeld v. Verizon, 909 A.2d 117 (Del. 2006)

26. Grimes v. Donald, 673 A.2d 1207 (Del. 1996)

27. Rales v. Blasband, 634 A.2d 927 (Del. 1993)